UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARIFFE VAUGHN, | Case No.: 18-cv-2098-JAH-MDD |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| CORRECTIONAL OFFICER A. PARKER, | |
| Defendant. | **[ECF No. 37]** |

This Report and Recommendation is submitted to United States District Judge John A. Houston pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c) of the United States District Court for the Southern District of California. For the reasons set forth herein, the Court **RECOMMENDS** Defendant's motion for summary judgment be **GRANTED**.

## I. PROCEDURAL HISTORY

On September 7, 2018, Plaintiff Shariffe Vaughn ("Plaintiff"), a state prisoner incarcerated at R.J. Donovan State Prison ("RJD") and represented by counsel, filed this civil complaint pursuant to 42 U.S.C. § 1983 against Defendant Correctional Officer A. Parker ("Defendant") alleging three causes

of action: (1) failure to protect, unlawful punishment, and excessive force in violation of the Eighth and Fourteenth Amendments; (2) negligence; and (3) battery. (ECF No. 1, hereinafter "Compl.").

On August 1, 2019, Defendant filed the instant motion for summary judgment. (ECF No. 37, hereinafter "MSJ"). Defendant argues there is no evidence to support Plaintiff's claims and Defendant is entitled to qualified immunity. (*Id.* at 8-9).[1] On September 3, 2019, Plaintiff filed a response in opposition to Defendant's motion [ECF No. 44 ("Oppo.")], to which Defendant replied [ECF No. 51 ("Reply")]. After obtaining leave of Court, Plaintiff timely filed a sur-reply. (ECF No. 56 hereinafter "Sur-Reply").

## II. EVIDENTIARY OBJECTIONS

As an initial matter, the parties each object to the other's evidence on various grounds and it is "unnecessary and impractical . . . to methodically scrutinize each objection and give a full analysis of each argument raised." *Capitol Records, LLC v. BlueBeat, Inc.*, 765 F. Supp. 2d 1198, 1200 n.1 (C.D. Cal. 2010)). Nearly all these objections are "boilerplate recitations of evidentiary principles or blanket objections without analysis applied to specific items of evidence." *See Stonefire Grill, Inc. v. FGF Brands, Inc.*, 987 F. Supp. 2d 1023, 1033 (C.D. Cal. 2013) (internal quotation marks and citation omitted).

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). District courts consider evidence with content that would be admissible at trial, even if the form of the evidence would not be

---

[1] All pincite page references refer to the automatically generated ECF page number, not the page number in the original document.

admissible. *See Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003); *Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001). For these reasons, the Court only addresses three categories of objections raised by the parties.[2]

### A. Omission of Evidence

First, Plaintiff objects to Defendant's deposition transcript because page 81 was omitted from the record. (ECF Nos. 37-1 at 14; 44-1 at 28). However, Plaintiff's copy of Defendant's deposition transcript includes page 81. (*See* ECF No. 44-4 at 84). Thus, the Court **OVERRULES** Plaintiff's objection.

### B. Objections to Declarations

Second, Defendant objects to "all of the declarations relied upon by Plaintiff (with the exception of inmates Tankersly, Mckinley and DiDonato)" because they are based on personal knowledge and information and belief. (Reply at 13). Defendant contends these declarations are inadmissible because there is no way to tell which portions of the declarations are based on personal knowledge. (*Id.*). Defendant also contends Plaintiff's declaration is a sham declaration. (ECF No. 52 at 2).

#### 1. Personal Knowledge and Information and Belief

In opposition to Defendant's motion for summary judgment, Plaintiff attaches declarations of multiple inmates. (*See* ECF No. 57). Ten inmate declarations and Plaintiff's declaration are based on their "personal

---

[2] Objections to the characterization of or purported misstatement of the evidence represented are not considered. Instead the Court considers the evidence itself. *See Hanger-Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc.*, 556 F. Supp. 2d 1122, 1126 n.1 (E.D. Cal. 2008). The Court also will not consider objections on the grounds that the evidence is irrelevant, speculative, argumentative, or any Federal Rule of Evidence 403 objections. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006); *Montoya v. Orange Cnty. Sheriff's Dep't*, 987 F. Supp. 2d 981, 994 (C.D. Cal. 2013).

knowledge . . . except for those matters known on information and belief."
(ECF Nos. 47, 57 at 5-18).  Pursuant to Federal Rule of Civil Procedure
56(c)(4), "declaration[s] used to support or oppose a motion must be made on
personal knowledge, set out facts that would be admissible in evidence, and
show that the . . . declarant is competent to testify on the matters stated."
Fed. R. Civ. P. 56(c)(4).  As such, declarations based on information and belief
in opposition to motions for summary judgment are "entitled to no weight."
*Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1412 (9th Cir. 1995).  However,
personal knowledge can be inferred from a declarant's position and nature of
participation in the matter.  *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d
999, 1018 (9th Cir. 1990).

     The Court can infer Plaintiff's personal knowledge because the
declaration discusses events he personally participated in.  (*See* ECF No. 47
at 1-2).  Additionally, the Court can infer Elvin Hamilton's, Jonathan
Mendoza's, and Antonio Welch's personal knowledge because they declare
that they were in close physical proximity to the Plaintiff when he was shot
or were able to clearly see the incident in question.  (*See* ECF No. 57 at 8, 10,
13).  As a result, Defendant's objections for lack of personal knowledge to
these declarations are **OVERRULED**.  (*See id.*).  The Court can infer Henry
Joseph Vasquez's[3] and Alan Devon's[4] personal knowledge as to some portions,
but not all, of their declarations.  (*See id.* at 12, 14-18).  Therefore, the Court
**SUSTAINS IN PART** the objection for lack of personal knowledge to these

---

[3] Vasquez declares based on personal knowledge that two inmates "jumped on" Plaintiff
and Defendant "shot [Plaintiff] in the face."  (ECF No. 57 at 12).
[4] The Court can only infer personal knowledge for Devon's statement that two men
approached and tried to punch Plaintiff and "not seconds later" Defendant fired at
Plaintiff's head.  (ECF No. 57 at 16-17).

declarations. (*See id.*). However, the Court is unable to determine the remaining declarants' positions or nature of participation in the relevant incident and **SUSTAINS** Defendant's objections with respect to D'Ron Botts', Clifford W. Campbell's, Domingo L. Cleveland's, Morry P. Kutniewski's, and Ernest Tillman's declarations. (*See id.* at 5-9, 11).

## 2.  *Sham Declaration*

Defendant also objects to paragraph 13 of Plaintiff's declaration on the grounds that it is a sham declaration. (ECF No. 52 at 2). A court may discount a sham declaration that "flatly contradicts" prior deposition testimony that has been provided for the sole purpose of creating a genuine issue of material fact. *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 267 (9th Cir. 1991); *see Nelson v. City of Davis*, 571 F.3d 924, 927 (9th Cir. 2009). Here, Plaintiff declares that on July 25, 2017, Tankersly "complained about how my protests were upsetting his dayroom time and then attacked me." (ECF No. 47, hereinafter "Pl. Decl." ¶ 13). At his deposition, Plaintiff testified that Tankersly asked "[w]hy are you messing up our program?" (ECF No. 37-6 at 38). Plaintiff also testified that inmates did not have dayroom time during the relevant timeframe because there was a lockdown. (*Id.* at 18-19). Defendant contends this impermissibly changes the testimony to specify that the "program" is "dayroom time." (ECF No. 52 at 3). The Court **OVERRULES** Defendant's objection because the difference between Plaintiff's declaration and deposition testimony does not create a genuine issue of material fact. *See Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) (stating that an inconsistency between a party's deposition testimony and declaration must be clear and unambiguous to justify striking the declaration).

//

## C.    Mr. Adams' Expert Report

Finally, Defendant objects to the opinion of Plaintiff's expert, Will Adams, that Defendant was either deliberately indifferent or negligent. (ECF No. 51 at 5; *see also* ECF No. 52 at 16).  Plaintiff maintains that Mr. Adams' opinion is admissible.  (ECF No. 56).

"'Under Federal Rule of Evidence 702, matters of law are inappropriate subjects for expert testimony.'" *United States ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325, 337 (9th Cir. 2017) (quoting *Hooper v. Lockheed Martin Corp.*, 688 F.3d 1037, 1052 (9th Cir. 2012)).  Similarly, Federal Rule of Evidence 704(a) prohibits an expert witness from giving an opinion "'as to [his] *legal conclusion*, i.e., an opinion on an ultimate issue of law.'" *United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017) (quoting *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004)); *see also Andrews v. Metro-North Commuter R. Co.*, 882 F.2d 705, 708-09 (2d Cir. 1989) (expert in a negligence action may not testify that a defendant was "negligent").

Here, Mr. Adams does not establish genuine disputes of material fact regarding deliberate indifference or negligence; rather, he simply draws legal conclusions from undisputed facts.  (*See* ECF No. 44-4 at 512-37).  For example, Mr. Adams opines Defendant was deliberately indifferent because he had been trained in using the 40mm launcher and considered himself a good shot, was aware of the relevant rules and policies regarding the 40mm launcher, and had used the 40mm launcher multiple times. (*Id.* at 528-29). Similarly, he opines Defendant was negligent because he was aiming for an inmate's thigh and hit someone's face.  (*Id.* at 526-27).  He also speculates that Defendant may have "reacted too quickly," failed to take a stable shooting stance, or did not use the sighting system properly.  (*Id.* at 526-27).

Whether the facts establish deliberate indifference or negligence is a

18-cv-2098-JAH-MDD

legal conclusion within the Court's province at the summary judgment stage. *See Andrews*, 882 F.2d at 708-09 (expert in a negligence action may not testify that a defendant was "negligent"); *Pauls v. Green*, 816 F. Supp. 2d 961, 979 (Idaho 2011) (striking, at the summary judgment stage, an expert opinion that the defendants acted with "deliberate indifference to the rights and safety of the [plaintiffs] in the face of well-known risks"); *see also Davis v. Wash. State Dep't of Soc. & Health Servs.*, No. 2:18-CV-00194-SMG, 2018 U.S. Dist. LEXIS 202795, at *17 (E.D. Wash. Nov. 29, 2018) (same). Accordingly, Mr. Adams' deliberate indifference and negligence opinions are inappropriate opinions on ultimate issues of law currently before the Court. The Court, therefore, **SUSTAINS** Defendants' objection and will not consider Mr. Adams' opinions that Defendant was either deliberately indifferent or negligent in ruling on Defendant's motion for summary judgment.

## III. STATEMENT OF FACTS[5]

From July 19, 2017 at 5:30 p.m. to July 25, 2017, Plaintiff was incarcerated at RJD and assigned to Facility C, Housing Unit 15 ("HU 15"), Section B. (ECF No. 37-6, Ex. A, hereinafter "Pl. Depo." at 39:2-16, 42:6-22, 62:7-9; Doc. No. 37-6, Ex. H). Inmates Tankersly and Botello were cell mates assigned to HU 15, Section A. (ECF No. 37-6, Ex. H). HU 15 is a two-level building with a "U" shaped dayroom surrounded by approximately 100 cells—50 on each level. (ECF No. 37-3, hereinafter "Def. Decl." ¶ 3; ECF No. 44-4, Exs. 8-9). The dayroom is divided into three sections—A, B, and C. (Def.

---

[5] These material facts are taken from the parties' separate statements of undisputed facts and pertinent cited exhibits. Disputed material facts are discussed in further detail where relevant to the Court's analysis. Facts that are immaterial for purposes of resolving the current motion are not included in this recitation. As a result, the Court does not analyze Defendant's immateriality arguments. (*See* Reply at 14-15).

Decl. ¶ 3; ECF No. 44-4, Exs. 8-9). The cells "ring the dayroom" and the control booth is centrally located on the second floor about fifteen feet above the dayroom. (Def. Decl. ¶ 3; ECF No. 44-4, Exs. 8-9). The control booth is a secured location with windows on all three sides. (Def. Decl. ¶ 3; ECF No. 44-4, Exs. 8-9). Two medication windows are located in Section A. (Pl. Depo. at 75: 16-76:8; ECF No. 37-6, Ex. B and ECF No. 44-4, Ex. 1, hereinafter "Def. Depo." at 58:22-59:14; Shepherd Depo. at 14:2-18; ECF No. 44-4, Exs. 8-9).

HU 15 was on a modified program from July 19th to the 25th. (*Id.* at 62:7-9; ECF No. 37-6, Ex. D, hereinafter "Galaviz Depo." at 33:8-12, 34:1-10, 35:7-11, Attach. A). The modified program permitted inmates to leave their cells to receive medication ("pill line"). (Pl. Depo. at 63:11-15; Galaviz Depo., Attach. A). When medication is distributed, the control booth officer releases inmates receiving medication for pill line. (Def. Depo. at 44:18-45:21). Pursuant to the terms of the modified program in effect, inmates are expected to immediately return to their cell after receiving their medication. (Def. Depo. at 78-24-79:3).

On Thursday, July 20, 2017 correctional officers searched HU 15. (Pl. Depo. at 45:3-19). Following the search, Plaintiff discovered all his property was confiscated. (*Id.* at 45:17-23; *see* ECF No. 37-6, Ex. E, hereinafter "Shepherd Depo." at 72:8-73:14). In response, Plaintiff protested by lying on the dayroom floor and refusing to return to his cell. (Pl. Depo. at 45:24-46:14). Plaintiff protested daily in a similar fashion until July 25, 2017. (*Id.* at 65:23-66:12, 68:12-69:12, 78:4-12). Plaintiff does not recall what time he protested on July 24th, but on July 25, 2017, he protested in the morning when Defendant was not working. (*Id.* at 68:21-69:1, 78:4-7; ECF No. 37-6, Ex. J).

Defendant was assigned to the control booth during evening pill line at

HU 15 on July 25, 2017. (Def. Depo. at 14:16-17, 17:12-18; ECF No. 37-6, Ex. J; Def. Decl." ¶ 2). Defendant typically lets some inmates out at a time, starting on one side of the building and moving towards the other side. (Def. Depo. at 58:11-25, 78:15-25). That evening, Defendant opened four to five cell doors at a time, releasing roughly ten inmates at a time. (Galvatiz Depo. at 43:19-44:4; Shepherd Depo. at 68:17-69:5). The officers try to ensure no more than six inmates are in each pill line at a time. (Galvatiz Depo. at 47:22-25). When inmates return to their cells, additional inmates are released for pill line. (*Id.*at 48:1-8).

When Plaintiff, from Section B, was released from his cell for pill line, there were roughly six to nine inmates in the dayroom. (Pl. Depo. at 82:8-18; Def. Depo. at 79:6-8). Tankersly and Botello, from Section A, were out of their cells as well. (Def. Depo. at 78:5-8). Pursuant to the modified program in effect at the time, no more than one section should have been released at a time. (Doc. No. 44-4, Ex. 14).

After Plaintiff received his medication, Tankersly confronted Plaintiff with his fists clenched and asked "Hey. What's up, Bro? What's your problem? Why you messing up our program?" (Pl. Depo. at 87:14-22; *see* Galaviz Depo. at 67:5-18). Plaintiff tried to walk away, but Tankersly punched him in the back of his head. (Pl. Depo. at 28:6-17, 81:4-15, 87:23-24, 89:2-8; *see* ECF No. 57 at 10). Tankersly and Botello threw roughly four punches at Plaintiff before Plaintiff grabbed Botello and pulled him close to use as a shield. (*Id.* at 89:11-24). Plaintiff threw a punch back at Tankersly. (*Id.* at 90:5-6). Tankersly threw ten more punches which ultimately hit Botello. (*Id.* at 90:12-14). Botello also punched Plaintiff in his torso and stomach approximately fifteen times. (*Id.* at 98:13-21). Plaintiff felt like he was losing the fight. (*Id.* at 90:22-24). Prior to the altercation, Plaintiff had

never spoken to nor interacted with Tankersly or Botello and had never seen them speak to Defendant.  (*Id.* at 31:21-32:10, 69:12-24).

According to Botello, no one from RJD's staff asked him to attack Plaintiff.  (ECF No. 37-5, hereinafter "Botello Decl." ¶ 3).  Botello and Tankersly explain they attacked Plaintiff because he was "bullying and threatening another inmate."  (*Id.* ¶ 4; ECF No. 57 at 21).  Defendant also declares that he "never solicited or encouraged Tankersly, Botello, or any inmate to attack Plaintiff."  Def. Decl. ¶ 9.

At the time, Defendant was the only correctional officer stationed in the control booth tasked with observing the dayroom and maintaining the safety and security of the institution, inmates, and staff.  (Def. Depo. at 66:2-3; Doc. No. 37-6, Ex. K).  Defendant had access to three use of force options: (1) a Ruger mini-14 rifle; (2) a 40mm launcher; and (3) a large canister of MK-46 OC Spray.  (Def. Decl. ¶ 5).  The mini-14 rifle is a "lethal" use of force option and the OC canister releases pepper spray and is designed for use with large crowds with multiple targets.  (*Id.* ¶ 6; *see* ECF No. 44-1 at 25).  The 40mm launcher is a "less than lethal" use of force option if used for targets at least 10 feet away that fires a single direct impact foam round or wood block round.  (Def. Depo. at 34:13-35:2, 51:9-16; Def. Decl. ¶ 6; *see* ECF No. 37-6, hereinafter "Hampton Depo." at 71:2-9; Doc. No. 37-6, Ex. K).  Correctional officers are not permitted to shoot an inmate's head with the 40mm launcher because "[t]hat would be using deadly force."  (Def. Depo. at 72:11-73:20).

Correctional Officers Galaviz and Salagubang were working as floor officers in HU 15 at the time of the altercation.  (Def. Depo. at 43:20-22; Galaviz Depo. at 10:18-20, 22:1-2; ECF No. 44-4, Ex. 7 and ECF No. 37-6, Ex. F, hereinafter "Salagubang Depo." at 11:5-8).  Floor officers carry pepper spray, with a maximum effective range of 12 feet, and a baton.  (Galaviz

Depo. at 29:3-12; ECF No. 37-6, Ex. L). Officer Galaviz was monitoring the pill line about 20-25 feet away from Plaintiff, Tankersly, and Botello when the altercation began. (Galaviz Depo. at 67:5-19, 68:18-6913). Officer Salagubang was monitoring the pill line from a podium, where she could see the line, but not the pill windows. (Salagubang Depo. at 29:5-16).

Defendant saw "three guys swinging their arms at each other" from the control both and "[t]old the day room to get down, called the Code 1, hit [his] alarm, and grabbed the [40mm launcher]." (Def. Depo. at 81:3-6, 85:22-25; *see* Galaviz Depo. at 69:17-70:19; Botello Decl. ¶ 3; *see* ECF No. 57 at 8). Defendant assessed the fight as one not necessarily involving a threat of death and elected to use the 40mm launcher with foam rounds based on the distance of the inmates and the ability to target the fighting inmates. (Def. Decl. ¶ 7-8). Defendant declares he "wanted to subdue the fighting to prevent unrest from spreading, and further injury to the combatants." (*Id.* ¶ 7). Officer Galaviz was approaching the altercation when he "saw [Defendant] approach the window . . . with the 40[mm launcher]" and backed away. (Galaviz Depo. at 74:22-75:4).

Defendant "told the inmates to get down again[] and fired a shot." (Def. Depo. at 85:25-86:1; Galaviz Depo. at 72:3-17; Botello Decl. ¶ 3; Salagubang Depo. at 60:12-25). Plaintiff, Tankersly, and Botello were roughly 15-30 feet away from Defendant when he fired the 40mm launcher. (Pl. Depo. at 102:12-16; Def. Depo. at 86:12-14; Galaviz Depo. at 74:7-10). Tankersly was standing with his back to Defendant. (Def. Depo. at 87:6-15). Inmate Hamilton declares that Tankersly and Botello were backing up just before Defendant fired the 40mm launcher, but it is undisputed that Tankersly, Botello, and Plaintiff were close to each other. (ECF No. 57 at 8; Def. Depo. at 87:18-21). Officer Salagubang did not see the fight and does not remember

hearing an alarm, but remembers Defendant telling the inmates to "get down" or "stop" before firing "a round from the sponge." (Salagubang Depo. at 59:22-60:25). Plaintiff was "too focused on protecting [himself]" to notice whether Defendant ordered inmates to "get down" or "lockdown," whether other inmates had proned out, or where the floor officers were during the fight. (Pl. Depo. at 93:1-21, 94:14-24, 131:11-22).

Defendant contends he fired one foam round, targeting Tankersly's thigh. (Def. Depo. at 86:5-11, 90:24-91:4, 91:17-24). Defendant did not "recall where the round went . . . until after the incident," but it is undisputed the round hit Plaintiff in the face. (*Id.* at 86:18-25; Pl. Decl. ¶ 3; ECF No. 57 at 8-10, 12-21). From his position in the control booth, Defendant had a clear line of sight when he took the shot. (ECF No. 57 at 8-10, 12-21). Overall, the altercation lasted approximately thirty seconds. (Pl. Depo. at 90:9-10).

## IV. LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A judgment must be entered, "if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Liberty Lobby*, 477 U.S. at 250. "If reasonable minds could differ," judgment should not be entered in favor of the moving party. *Id.* at 250-51.

The parties bear the same substantive burden of proof as would apply at a trial on the merits, including plaintiff's burden to establish any element essential to his case. *Id.* at 252; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). The moving party

bears the initial burden of establishing the basis of its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The moving party has "the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed the light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982). More than a "metaphysical doubt" is required to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The burden then shifts to the non-moving party to establish, beyond the pleadings, that there is a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324. To successfully rebut a properly supported motion for summary judgment, the nonmoving party "must point to some facts in the record that demonstrate a genuine issue of material fact and, with all reasonable inferences made in the plaintiff['s] favor, could convince a reasonable jury to find for the plaintiff[]." *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000) (citing Fed. R. Civ. P. 56; *Celotex Corp.*, 477 U.S. at 323; *Liberty Lobby*, 477 U.S. at 249).

## V. DISCUSSION

Defendant moves for summary judgment on Plaintiff's claims against him for excessive force, failure to protect, negligence, and battery on the grounds that his use of force was reasonable and that he is entitled to qualified immunity. (MSJ). Plaintiff opposes entry of judgment in Defendant's favor because there are genuine issues of material fact on all of

Plaintiff's claims.  (*See* Oppo.).

### A.    § 1983 Claims

Plaintiff's first cause of action raises claims for failure to protect and excessive force under the Eighth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983.  (ECF No. 1 ¶¶ 31-50).

#### 1.    *Eighth Amendment Excessive Use of Force*

The Eighth Amendment prohibits the infliction of cruel and unusual punishment.  U.S. Const. amend. VIII.  To prevail on an Eighth Amendment claim under § 1983, the plaintiff must show that objectively he suffered a "sufficiently serious" deprivation.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  The plaintiff must also show that subjectively the defendant had a culpable state of mind in allowing or causing the plaintiff's deprivation to occur.  *Id.* (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).

Plaintiff suffered a fractured left eye socket.  (MSJ at 23; Oppo. at 16).  Defendant does not argue that Plaintiff's injury is not objectively serious.  Therefore, the Court will consider whether Defendant acted "with a sufficiently culpable state of mind."  *Hudson*, 503 U.S. at 8.

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in [*Whitley v. Albers*, 475 U.S. 312 (1986)]: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson*, 503 U.S. at 6-7.  To determine whether the force used was excessive, courts consider factors such as the need for the application of force, the relationship between the need and amount of force that was used, and the extent of injury inflicted.  *Whitley*, 475 U.S. at 321.  "Equally relevant are such factors as the extent of

the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them, and any efforts made to temper the severity of a forceful response." *Id.*

Plaintiff fails to establish that Defendant maliciously and sadistically fired the 40mm launcher for the very purpose of causing him harm. It is undisputed that Defendant fired the 40mm launcher because Plaintiff, Tankersly, and Botello were engaged in an altercation in the dayroom during pill line. (*See* Def. Decl. ¶¶ 7-8). Defendant ordered the inmates to get to the ground before firing, but they did not comply. (Def. Depo. at 81:3-6, 85:22-25; *see* Galaviz Depo. at 69:17-70:19; Botello Decl. ¶ at 3; ECF No. 57 at 8). Defendant then used less-than-lethal force, namely firing a foam round, on the three inmates. (Def. Depo. at 86:5-11, 90:24-91:4, 91:17-24). The foam round struck Plaintiff, but Defendant contends he was aiming for Tankersly's thigh. (*Id.*). Thus, an inference can "be drawn as to whether the use of force could plausibly have been necessary" to quell the fight before it escalated into a situation that might pose "significant risks to the safety of inmates and prison staff." *Whitley*, 475 U.S. at 320-21 (finding the intentional shooting of an inmate was part of a good faith effort to restore prison security and did not violate the inmate's Eighth Amendment rights). The use of less-than-lethal force was appropriate to the situation. *Hudson*, 503 U.S. at 7. The undisputed facts do not indicate Defendant acted maliciously or sadistically to harm Plaintiff. Rather, given the circumstances, Defendant's use of force was a good faith attempt at restoring order.[6]

_____

[6] Plaintiff fails to raise genuine issues of material fact regarding Defendant's state of mind. His arguments that Defendant solicited Tankersly and Botello to attack him and that Defendant was aiming for his head are unsupported by admissible evidence. His only support for these arguments are inadmissible inmate declarations that lack personal

The fact that Plaintiff was the victim of the attack does not change the Court's analysis. Plaintiff admits to being involved in the altercation—he pulled Botello close to him to use him as a shield and threw a punch at Tankersly. (Pl. Depo. at 89:11-24, 90:5-6). It is also undisputed that the three inmates refused Defendant's orders to get down. (*See* Def. Depo. at 85:25-86:1, 87:6-15; Galaviz Depo. at 72:3-17; Botello Decl. ¶ 3). While Plaintiff explains he was too preoccupied protecting himself to notice whether he was ordered to get down (Pl. Depo. at 93:1-21, 94:14-24, 131:11-22), it was reasonable for Defendant to perceive Plaintiff's actions as equally aggressive as he observed the altercation from the control booth. Therefore, it was reasonable for Defendant to shoot the 40mm launcher at Plaintiff in a good faith effort to restore discipline. *See Hudson*, 503 U.S. at 6; *Whitley,* 475 U.S. at 321-22; *See Dicks v. Witte*, No. 16cv713-MMA(BLM), 2018 U.S. Dist. LEXIS 2459, at *5-8 (S.D. Cal. Jan. 4, 2018) (finding defendant did not act maliciously and sadistically in firing a 40mm launcher where the plaintiff was involved in a fight with another inmate and ignored commands to get down); *Brown v. McCullough*, No. 2:11-cv-00093 JAM JFM (PC), 2013 U.S. Dist. LEXIS 108370, at *18-19 (E.D. Cal. Aug. 1, 2013) (granting summary judgment in favor of a defendant who shot a 40mm launcher towards three fighting inmates and hit one, the plaintiff, in the head, in an effort to restore order); *Hardge v. Alameida*, No. 1:05-cv-00718-LJO-DLB PC, 2010 U.S. Dist. LEXIS 61090, at *10 (E.D. Cal. June 21, 2010) (granting summary judgment in favor of the defendant in an observation tower above fighting inmates who

_____

knowledge. Conversely, there is evidence that Tankersly and Botello attacked Plaintiff because he was bullying another inmate and were not told to attack Plaintiff by Defendant. (Botello Decl. ¶ 3; ECF No. 57 at 21; Def. Decl. ¶ 9).

fired a rubber bullet at the fighting inmates, but unintentionally hit a compliant non-fighting inmate).

Plaintiff also argues other methods of force could have been utilized to secure the incident. (Oppo. at 12-13, 15). For example, he contends Officer Galaviz was nearby, and Defendant could have used the MK-46 OC Spray canister or the Ruger mini-14 rifle. (*Id.*). However, the fact that the degree of force used appears unreasonable in hindsight is not in itself sufficient to establish a constitutional violation. *Whitley*, 475 U.S. at 319. Prison officials are "accorded wide-ranging deference in the adoption and execution of policies and practices in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id.* at 321-22 (citing *Bell v. Wolfish*, 441 U.S. 520, 547 (1970)). Correctional officers, like Defendant, must make decisions "'in haste, under pressure, and frequently without the luxury of a second chance.'" *Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 320). As discussed herein, the inquiry is whether Defendant's actions were applied in a good faith effort to maintain or restore discipline. *Whitley*, 475 U.S. at 320-21. Defendant has provided evidence that his subjective state of mind was to stop the altercation from escalating. Plaintiff has not demonstrated a genuine issue of material fact from which an inference could be drawn that Defendant's subjective state of mind was to maliciously and sadistically harm Plaintiff.

### 2. *Eighth Amendment Failure to Protect*

Plaintiff argues Defendant failed to protect him by permitting inmates from different sections to be released for pill line and subsequently allowing Tankersly and Botello to remain in the dayroom after receiving medication instead of returning to their cell.

Under the Eighth Amendment, prison officials must "take reasonable

18-cv-2098-JAH-MDD

measures to guarantee the safety of the inmates." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). Thus, "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (internal quotation marks and citation omitted). A failure to protect claim under the Eighth Amendment requires a showing that "the official [knew] of and disregard[ed] an excessive risk to inmate health or safety." *Id.* at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Id.* "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842.

As articulated above, there is no admissible evidence that Defendant solicited Tankersly and Botello to attack Plaintiff. Moreover, Defendant contends that he "operated the pill line in his customary manner," releasing roughly ten inmates at a time starting on one side of the building and moving towards the other side. (Oppo. at 27; Def. Depo. at 58:11-25, 78:15-25). This meant that Plaintiff, from Section B, was in the dayroom for pill line at the same time as Tankersly and Botello, from Section A. (Pl. Depo. at 82:8-18; Def. Depo. at 79:6-8, 78:5-8). However, the modified program in effect specified that no more than one section should have been released at a time. (Doc. No. 44-4, Ex. 14).

It does not follow, however, that Plaintiff's Eighth Amendment failure to protect claim should survive summary judgment. Even if Defendant knowingly permitted inmates from different sections to be in the dayroom for pill line at the same time and did not require Tankersly and Botello to immediately return to their cell, there is no evidence suggesting Defendant knew he was thereby exposing Plaintiff to a substantial risk of serious harm. *See Brown v. Lopez*, No. 1:10 cv 00124 GSA PC, 2013 U.S. Dist. LEXIS

174204, at *15-16 (E.D. Cal. Dec. 12, 2013) ("While Plaintiff sincerely believes that Defendant intentionally let Romero and Stark out of their cell with the intention that they harm Plaintiff, he offers no [admissible] evidence on which to base this belief."). The record shows that at that time, Plaintiff had no fear of Tankersly or Botello and he did not believe that anyone posed a threat to his safety and well-being. (*See* Pl. Depo. at 31:21-32:10, 69:12-24). Plaintiff has offered no evidence suggesting Defendant knew about any threat to Plaintiff's safety.

The Court notes that a prison official can be held liable without explicitly admitting he knew the plaintiff was exposed to a substantial risk of serious harm because the subjective requirement can be established by circumstantial evidence. *See Farmer*, 511 U.S. at 842 ("Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence"). However, to establish liability, the trier of fact must conclude the defendant himself actually did infer that the plaintiff was in danger. *See id.* at 837 ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."). Here, there is no admissible evidence—direct or circumstantial—that would allow a trier of fact to infer that Defendant actually knew or drew the inference that Plaintiff was being exposed to a substantial risk of serious harm when he permitted Plaintiff, Tankersly, and Botello to be in the dayroom during pill line at the same time.

Even further, a prison official defendant may be liable only if he "disregards th[e substantial] risk [of harm] by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. Here, the altercation lasted approximately thirty seconds. (Pl. Depo. at 90:9-10). In that short time

frame, Defendant saw "three guys swinging their arms at each other," ordered the inmates in the dayroom to get down twice, "called the Code 1, hit [his] alarm, and grabbed the [40mm launcher]." (Def. Depo. at 81:3-6, 85:22-25; *see* Galaviz Depo. at 69:17-70:19; Botello Decl. ¶ 3; *see* ECF No. 57 at 8). Defendant also assessed the altercation as one not involving a threat of death and elected to use the 40mm launcher with foam rounds. (Def. Decl. ¶¶ 7-8). Defendant then fired the 40mm launcher once after the Plaintiff, Tankersly, and Botello failed to comply with his orders, at which time the altercation ended. (*See* Pl. Depo. at 93:1-21, 94: 14-24, 131:11-22; Def. Depo. at 86:5-15, 87:18-21, 90:24-91:4, 91:17-24; ECF No. 57 at 8). Thus, Defendant timely and reasonably responded to the attack on Plaintiff and was not deliberately indifferent to a serious risk to Plaintiff's safety.

### 3. *Fourteenth Amendment*

Plaintiff raises the same facts for his Fourteenth Amendment claims as his Eighth Amendment claims. (*See* Compl. ¶¶ 31-50; *see also* Oppo.). "'[W]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994)). As discussed above, the Eighth Amendment provides an explicit source of protection for the type of conduct alleged by Plaintiff.[7] *See Farmer*, 511 U.S. at 834; *Hudson*, 503 U.S. at 6-7; *Whitley*, 475 U.S. at 319.

---

[7] To the extent Plaintiff alleges a due process claim under § 1983 for deprivation of property, that claim also fails as a matter of law because California law provides an adequate post-deprivation remedy. (*See* Compl. ¶¶ 31-50); *see Palmer*, 468 U.S. 5 at 533; *Barnett v. Centoni*, 31 F.3d 816, 816-17 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810-895).

Accordingly, his claim is not properly stated under the Fourteenth Amendment. [8]

## B.    State Law Claims

Plaintiff also asserts two state law negligence and battery claims against Defendant.  (Compl. ¶¶ 51-74).

### 1.    *Negligence*

"'[I]n order to prove facts sufficient to support a finding of negligence, a plaintiff must show that [the] defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury.'"  *Hayes v. Cnty. of San Diego*, 57 Cal. 4th 622, 629 (2013) (quoting *Nally v. Grace Cmty. Church*, 47 Cal. 3d 278, 292 (1988)).  The California Supreme Court "has long recognized that peace officers have a duty to act reasonably when using deadly force.  The reasonableness of an officer's conduct is determined in light of the totality of circumstances."[9]  *Id.* (citations omitted).

"A police officer's use of deadly force is reasonable if 'the officer has probable cause to believe that the suspect poses a significant threat of death or serious injury to the officer or others.'"  *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 528 (2009).  "Where potential danger, emergency conditions, or other exigent circumstances exist" the definition of reasonableness is "comparatively generous to the police."  *Id.* (internal quotation marks and

---

[8] Having found that Defendant is entitled to summary judgment on the merits of Plaintiff's § 1983 claims, there is no need to consider the defense of qualified immunity.  *See Wilkie v. Robbins*, 551 U.S. 537, 567 (2007).

[9] Although the case law cited was developed in noncustodial situations, correctional officers are subject to the same reasonable force restrictions.  *See In re Riddle*, 57 Cal. 2d 848, 852 (1962) ("[C]ustodial officers may use reasonable force upon a prisoner to enforce proper prison regulations.").

citation omitted).  Additionally, the reasonableness of a particular use of force "'must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'"  *Hayes*, 57 Cal. 4th at 632 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

Accordingly, "[a]s long as an officer's conduct falls within the range of conduct that is reasonable under the circumstances, there is no requirement that he or she choose the 'most reasonable' action or the conduct that is the least likely to cause harm and at the same time the most likely to result in the successful apprehension of a violent suspect, in order to avoid liability for negligence" and "[l]aw enforcement personnel have a degree of discretion as to how they choose to address a particular situation."  *Id.* (internal quotation marks and citations omitted).

Here, it is undisputed that Plaintiff, Tankersly, and Botello were throwing punches at one another and that the three inmates did not comply with Defendant's orders to get down.  It is well established that the "use of hands or fists alone" may produce serious injury.  *See People v. Aguilar*, 16 Cal. 4th 1023, 1028 (1997) (stating that "the use of hands or fists alone may support a conviction of assault 'by means of force likely to produce great bodily injury'"); *see also In Re Nirran W.*, 207 Cal. App. 3d 1157, 1161-62 (1989) (noting that a single punch to the jaw may support a finding of assault by means of force likely to produce great bodily injury).  While Defendant did not assess the fight as one necessarily involving a threat of death, he "wanted to subdue the fighting to prevent unrest from spreading, and further injury to the combatants."  (Def. Decl. ¶¶ 7-8).  Thus, Defendant's use of force was within the range of reasonable conduct under the circumstances.  *See Arrendell v. Perez*, No. D065719, 2015 Cal. Unpub. LEXIS 6640, at *14-19 (Cal. Ct. App. 4th Dist. Sept. 17, 2015) (finding a correctional officer not

negligent for missing her target and shooting an innocent bystander inmate in the left eye with a mini 14 rifle categorized as lethal force because she was reasonably trying to stop other inmates from fighting).[10]  Moreover, because "there is no requirement that [the officer] choose the 'most reasonable' action or the conduct that is the least likely to cause harm" the fact that Defendant had other use of force options available or other correctional officers may have been able to end the altercation does not render Defendant liable for negligence.  *See Hayes*, 57 Cal. 4th at 632 (internal quotation marks and citation omitted).

### 2.    *Battery*

Plaintiff also asserts a cause of action for battery against Defendant for hitting Plaintiff in the head with the foam round from the 40mm launcher. (*See* ECF No. 1 ¶¶ 62-74).  The Eighth Amendment's analytical framework governing Plaintiff's § 1983 claim applies with equal force to his state law claim for battery.  *See Edson v. City of Anaheim*, 63 Cal. App. 4th 1269, 1273-74 (1998) (applying § 1983 claim standards to state law battery claim). Therefore, Plaintiff's battery claim fails because his excessive force claim fails.

## VI. CONCLUSION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Court issue an Order: (1) Approving and Adopting this Report and Recommendation; and (2) **GRANTING** Defendant's Motion for Summary Judgment.

**IT IS HEREBY ORDERED** that any written objections to this Report

---

[10] Federal courts "may consider unpublished state decisions."  *Emp'rs Ins. of Wausau v. Granite St. Ins. Co.*, 330 F.3d 1214, 1220 n.8 (9th Cir. 2003).

must be filed with the Court and served on all parties no later than **<u>October 31, 2019</u>**.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objection shall be filed with the Court and served on all parties no later than **<u>November 7, 2019</u>**.  The parties are advised that the failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998).

**IT IS SO ORDERED.**

Dated:   October 16, 2019

Hon. Mitchell D. Dembin
United States Magistrate Judge

18-cv-2098-JAH-MDD