1
2
3
4
5
6                   UNITED STATES DISTRICT COURT
7                 SOUTHERN DISTRICT OF CALIFORNIA
8

9    SHARIFFE VAUGHN,                    Case No.:  3:18-cv-02098-JAH-MDD
10                  Plaintiff,
                                         **ORDER:**
11   v.
                                         **(1) SUSTAINING IN PART AND**
12   CORRECTIONAL OFFICER A.             **OVERRULING IN PART**
     PARKER,                             **PLAINTIFF'S OBJECTIONS TO**
13                                       **THE MAGISTRATE JUDGE'S**
                    Defendant.           **REPORT & RECOMMENDATION**
14                                       **[Doc. NO. 61];**
15
16                                       **(2) ORDER ADOPTING IN PART**
17                                       **AND DECLINING TO ADOPT IN**
                                         **PART THE MAGISTRATE JUDGE'S**
18                                       **REPORT & RECOMMENDATION**
                                         **[Doc. No. 60];**
19
20                                       **(3) GRANTING IN PART AND**
21                                       **DENYING IN PART DEFENDANT'S**
                                         **EX-PARTE MOTION TO STRIKE**
22                                       **[Doc. No. 70]; AND**
23
24                                       **(4) GRANTING IN PART AND**
                                         **DENYING IN PART DEFENDANT'S**
25                                       **MOTION FOR SUMMARY**
26                                       **JUDGMENT [Doc. No. 37]**

27                        **<u>INTRODUCTION</u>**

28      This matter comes before the Court on Defendant Correctional Officer A. Parker's

                                    1

("Defendant") motion for summary judgment ("MSJ"), the Report and Recommendation ("R&R") of the Honorable Mitchell D. Dembin, United States Magistrate Judge, and objection thereto filed by Plaintiff Shariffe Vaughn ("Plaintiff"). (Doc. Nos. 37, 60, 61). After careful consideration of the entire record, and for the reasons set forth below, the Court (1) **SUSTAINS in part** and **OVERRULES in part** Plaintiff's objections to the R&R (Doc. No. 61); **ADOPTS in part** and **DECLINES TO ADOPT in part** the R&R (Doc. No. 60); **GRANTS in part** and **DENIES in part** Defendant's ex-parte motion to strike (Doc. No. 70); and **DENIES** Defendant's motion for summary judgment (Doc. No. 37).

## BACKGROUND

On September 7, 2018, Plaintiff, an inmate at R.J. Donovan State Prison ("RJD") and represented by counsel, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 against Defendant, a correctional officer at RJD, alleging failure to protect, unlawful punishment, and excessive force in violation of the Eighth and Fourteenth Amendments; negligence; and battery. (Doc. No. 1). The complaint alleges, *inter alia*, that on July 25, 2017, while on duty at RJD, Defendant intentionally shot Plaintiff in the head with a block gun as part of his plan to punish Plaintiff, causing serious and permanent bodily harm ("incident"). (*Id.*) On November 21, 2018, Defendant answered the complaint. (Doc. No. 4).

On August 1, 2019, Defendant filed a motion for summary judgment arguing that he is entitled to summary judgment because there is no evidence to support Plaintiff's claims, and Defendant is entitled to qualified immunity. (Doc. No. 37 at 8-9). On September 3, 2019, Plaintiff filed an opposition to Defendant's MSJ. (Doc. No. 43). On September 11, 2019, Defendant replied. (Doc. No. 51). On September 18, 2019, Plaintiff filed a sur-reply after obtaining leave of Court. (Doc. Nos. 54, 56).

On October 16, 2019, pursuant to 28 U.S.C. § 636(b)(1), Judge Dembin filed the instant R&R recommending that this Court grant Defendant's MSJ. On October 30, 2019, Plaintiff filed objections to the R&R and requested an opportunity to complete discovery and cure any defects found in the declarations filed in opposition to Defendant's MSJ.

1  (Doc. No. 61). On November 7, 2019, Defendant replied to the objections. (Doc. No. 62).

2      On November 8, 2019, Plaintiff filed a declaration again requesting an opportunity

3  to complete discovery because after filing objections to the R&R, Plaintiff discovered that

4  an important witness, RJD inmate Wolinski, mailed a statement that Plaintiff never

5  received. (Doc. No. 63). From November 12, 2019 to November 26, 2019, Plaintiff filed

6  Wolinski's declaration in addition to five supplemental declarations of RJD inmates whose

7  original declarations were served in opposition to Defendant's MSJ. (Doc. Nos. 64, 65, 66,

8  67, 69). On November 27, 2019, Defendant filed an ex parte motion to strike. ("MTS").

9  (Doc. No. 70). The same day, Plaintiff filed an opposition to Defendant's MTS (Doc. No.

10  71). Defendant did not file a reply.

## DISCUSSION

## I. Defendant's Motion to Strike

13      Defendant seeks an order striking multiple declarations filed by Plaintiff after the

14  magistrate judge issued the R&R and the parties completed briefing on objections to the

15  R&R. Defendant argues Plaintiff's counsel's declaration, the Wolinski declaration, and

16  supplemental declarations of Botts, Campbell, Hamilton, Tillman, and Welch are improper

17  sur-replies. Plaintiff argues, in opposition, that no new arguments or issues are raised by

18  the declarations. He maintains his submissions contain newly discovered evidence that

19  clarifies previous testimony in support of the argument set forth in the opposition to the

20  motion for summary judgment.

### A. Supplemental Declarations

22      Plaintiff submits supplemental declarations for Botts, Campbell, Hamilton, Tillman

23  and Welch. Contrary to Defendant's argument, the declarations contain no new arguments

24  or issues and, instead, seek to clarify that the original declarations submitted in support of

25  the opposition were based on the declarant's personal knowledge and observation of the

26  incident. The Court finds the supplemental declarations are not sur-replies nor are they

27  improperly filed. Accordingly, Defendant's motion to strike the supplemental declarations

28  is **DENIED**.

**B. Counsel's Declaration and Wolinski Declaration**

Plaintiff also filed two additional declarations: 1) the declaration of Mr. Wolinski; and 2) Plaintiff's counsel's declaration requesting to complete discovery of newly discovered evidence: an additional unnamed inmate witness statement that was allegedly mailed to Plaintiff, but not received. Mr. Wolinski is the only witness whose declaration was never filed in support of Plaintiff's opposition to Defendant's MSJ. Defendant did not have the opportunity to respond or object to the declaration prior to the filing of the R&R. Therefore, the Court declines to consider Wolinski's declaration. Accordingly, Defendant's motion to strike is **GRANTED** as to the declaration of Mr. Wolinski.

Plaintiff's counsel's declaration contains a request to complete discovery to permit Plaintiff to obtain additional witnesses' testimony for consideration by the Court. If Plaintiff believes the additional testimony is necessary, he should file a properly noticed motion seeking leave to complete discovery.  Defendant's motion to strike Plaintiff's counsel's declaration is **GRANTED**.

## II.  Report and Recommendation

The district court's role in reviewing a magistrate judge's report and recommendation is set forth in Rule 72(b) of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(b)(1). When a party objects to the magistrate judge's report and recommendation, the district court "shall make a de novo determination of those portions of the report . . . to which objection is made," and may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id*.; *see also* Fed. R. Civ. P. 72(b)(3). The party objecting to the magistrate judge's findings and recommendation bears the responsibility of specifically setting forth which of the magistrate judge's findings the party contests. *See* Fed. R. Civ. P. 72(b). The district court need not review *de novo* those portions of a Report and Recommendation to which neither party objects. *See Wang. v. Masaitis*, 416 F.3d 992, 1000 n.13 (9th Cir. 2005); *U.S. v. Reyna-Tapia*, 328 F.3d 1114, 1121-22 (9th Cir. 2003) (*en banc*). It is well-settled that a district court may adopt those portions of a magistrate judge's report to which no specific

objection is made, provided they are not clearly erroneous. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985).

### A. Evidentiary Objections

The R&R addressed specific evidentiary objections raised by the parties in their respective briefs.

### 1.    Omission of Evidence

Plaintiff's opposition to Defendant's MSJ objects to Defendant's deposition transcript arguing page 81 was omitted from the record. However, the magistrate judge found that Plaintiff's copy of Defendant's deposition transcript includes page 81 and, therefore, overruled Plaintiff's objection. (Doc. No. 60 at 3). The Court finds no clear error in this portion of the R&R. Accordingly, the portion of the R&R overruling Plaintiff's objection to Defendant's deposition transcript is hereby **ADOPTED**.

### 2.    Objections to Declarations

In opposition to Defendant's MSJ, Plaintiff attached his declaration (Doc. No. 47) along with thirteen RJD inmate witness statement declarations.[1] In his objection to Plaintiff's evidence, Defendant contends Plaintiff's declaration is an inadmissible sham declaration because it changes Plaintiff's prior deposition testimony. In addition, Defendant contends that ten of the inmate declarations are inadmissible because they are not based on personal knowledge.[2]

### a.    Plaintiff's Declaration

The R&R overruled Defendant's objection to Plaintiff's declaration finding that the difference between Plaintiff's declaration and deposition testimony does not create a genuine issue of material fact. Neither party objected to this portion of the R&R, and this Court finds no error in it. Accordingly, the portion of the R&R addressing Plaintiff's

---

[1] (1) Botts; (2) Campbell; (3) Cleveland; (4) Hamilton; (5) Kutniewski; (6) Mendoza; (7) Tillman; (8) Vasquez; (9) Welch; (10) Devon; (11) DiDoneto; (12) McKinley; and (13) Tankersley. (Doc. No. 57).
[2] Defendant concedes the declarations of Tankersly, Mckinley, and DiDonato are based on personal knowledge and does not object to them.

declaration is hereby **ADOPTED**.

### b.   Inmate Declarations

### (i)   Declarations of Hamilton, Mendoza, and Welch

The R&R overruled Defendant's objection to the declarations of Hamilton, Mendoza, and Welch for lack of personal knowledge. The magistrate judge reasoned those three inmates' personal knowledge can be inferred from their statements in their respective declarations that they were in close physical proximity to Plaintiff when he was shot or they were able to clearly see the incident in question. Neither party made any objection to this portion of the R&R, and this Court finds no error. Accordingly, the portion of the R&R addressing the declarations of Hamilton, Mendoza, and Welch is hereby **ADOPTED**.

### (ii)   Declarations of Vasquez and Devon

The magistrate judge sustained in part Defendant's objection to the declarations of Vasquez and Devon for lack of personal knowledge finding the Court could infer personal knowledge as to some portions, but not all, of their declarations. Specifically, the magistrate judge determined the Court could infer Vasquez's personal knowledge that two inmates jumped on Plaintiff, and Defendant shot Plaintiff in the face. Further, the magistrate judge found the Court could infer Devon's personal knowledge that two men approached and tried to punch Plaintiff, and "not seconds later Defendant fired at Plaintiff's head." R&R at 4, n. 4. Plaintiff objects to the portion of the R&R sustaining the objections in part.  Plaintiff contends the declarations state each declarant's position and nature of participation, and that their testimony is based on personal observations which establish a dispute of material facts. In response, Defendant argues the declarations lack foundation as to the declarants' personal knowledge, do not create triable issues of material fact, and were therefore properly excluded. After reviewing the issue *de novo*, the Court disagrees.

Vasquez declares he was in the same housing unit as Plaintiff and that he was standing in the pill line during the events and saw Plaintiff "peacefully" lay down. (Doc. No. 57 at 12). He also declares he saw two inmates attack Plaintiff and he saw Defendant shoot Plaintiff in the face and heard him say "there's a peaceful protest!" (*Id*.).

Devon, who was in the cell immediately next to Plaintiff, attests his cell is 25-30 feet away from, and directly facing, Defendant's podium/control booth. (Doc. No. 57 at 17). Devon explains he was in his cell during the incident, could see the pill line from his cell, and was in a position to make personal observations. (*Id*. at 16-17). Additionally, he attests he heard Defendant say to all the inmates over the PA system that Plaintiff's actions caused the dayroom to be shut down. (*Id*. at 15). Devon declares he saw Plaintiff sit on the dayroom floor in "peaceful" protest when inmates were released from their cells to stand in line for pills; he saw the inmates that attacked Plaintiff (Tankersly and Botello) hanging out outside of their cells with staff when Defendant released Plaintiff from his cell to get his pills; he saw Defendant talking to Tankersly and Botello; he saw Tankersly and Botello walk up to and try to punch Plaintiff, but Plaintiff moved and neither inmate actually punched Plaintiff; and seconds later, he saw Defendant shoot Plaintiff in the head while Defendant was ten feet away from Plaintiff. (*Id*. at 14-18). After Defendant shot Plaintiff, Devon heard Defendant tell Plaintiff, "I told you Vaughn you would get it. You wouldn't listen." (*Id*. at 17).

This Court finds both Vasquez and Devon's declarations are based on personal knowledge. As such, Plaintiff's objection to the portion of the R&R sustaining in part Defendant's objection to the declarations of Vasquez and Devon is **SUSTAINED**.

### (iii)   Declarations of Cleveland and Kutniewski

Because the magistrate judge was unable to determine their positions or nature of their participation in the incident, the R&R sustained Defendant's objection to the declarations of Botts, Campbell, Cleveland, Kutniewski, and Tillman for lack of personal knowledge. Plaintiff objected to this portion of the R&R, contending the declarations state each declarant's position and nature of participation, and that their testimony is based on personal observations and establishes a dispute in material facts. Defendant replied, arguing the declarations lack foundation as to the declarants' personal knowledge, do not create triable issues of material fact, and were, therefore, properly excluded.

Turning first to the Cleveland declaration, Cleveland attests that he was present

when Plaintiff's property was taken, and he was present during the incident at pill call. (Doc. No. 57 at 7). Cleveland heard Defendant say to all the inmates over the PA system that it was Plaintiff's fault for the other inmates losing their dayroom privileges because Plaintiff was protesting. (*Id.*) He attests that two inmates attacked Plaintiff at Defendant's request, and that Defendant is known for shooting inmates in the head. (*Id.*) Accordingly, the Court finds the declaration of Cleveland, except for the statement that Defendant is known for shooting inmates in the head, is based on personal knowledge.  The Court **SUSTAINS IN PART** Plaintiff's objection to the portion of the R&R addressing Cleveland's declaration. The Court **ADOPTS** the portion of the R&R addressing Cleveland's statement that Defendant has a reputation for shooting inmates in the head.

Kutniewski testifies that he "did see and have full knowledge of both incidents, for [he] was there during all the incidents that accured [sic] to [Plaintiff]." However, Kutniewski fails to elaborate and specifically describe what he perceived with his own senses, where he was when he made personal observations, and to which incident(s) he ascribes his personal observations.[3] This Court agrees with the magistrate judge that Kutniewski's declaration is not based on personal knowledge because we are unable to determine his position or nature of participation in the event. Accordingly, the Court finds the declaration of Kutniewski is not based on personal knowledge and **ADOPTS** the portion of the R&R sustaining Defendant's objection to this declaration.

### (iv) <u>Declarations of Botts, Campbell and Tillman</u>

According to Mr. Botts's original and supplemental declarations, Botts lived in the same housing unit as Plaintiff and testified that he personally observed the events leading up to, and after, the shooting of Plaintiff by Defendant. (Doc. No. 57 at 5; Doc. No. 69 at 4). Botts saw Plaintiff lay down in the dayroom to "peacefully" protest Defendant taking his belongings. (Doc. No. 57 at 5). Botts also heard Defendant say to all the inmates over

---

[3] Plaintiff does not provide a supplemental declaration for Kutniewski to clarify.

Case 3:18-cv-02098-JAH-MDD   Document 74   Filed 06/10/22   PageID.1924   Page 9 of 21


a microphone that Plaintiff was to blame "for no program" (i.e., shutting down the dayroom). (*Id.*) When Tankersley and Botello began fighting with Plaintiff during pill call, Botts saw Defendant take direct aim at Plaintiff with a 40mm launcher and shoot him in the face. (Doc. No. 57 at 5; Doc. No. 69 at 4). Botts attests he saw Tankersley was positioned off to the side of where Defendant aimed. (Doc. No. 69 at 4). Shortly after the shooting, Botts heard Defendant laughing and talking to an officer Botts knew as "G," whose name could be Galaviz. (Doc. No. 57 at 5; Doc. No. 69 at 4). Botts heard Defendant refer to Plaintiff's protests interfering with the housing unit's program and state that Defendant was going to shoot Plaintiff whether or not Plaintiff had got down on the floor. (Doc. No. 69 at 4).

Mr. Campbell also lived in the same housing unit as Plaintiff. (Doc. No. 57 at 6; Doc. No. 67 at 3-5). He is housed in an ADA wheelchair cell directly behind Defendant's desk and testified that he personally observed the events leading up to, and after, the shooting. (Doc. No. 57 at 6; Doc. No. 67 at 3-5). Before the event, Campbell saw Plaintiff lay down in front of Defendant's desk in "peaceful" protest, and then be handcuffed by RJD staff and escorted upstairs to his cell. (Doc. No. 67 at 3-5). Then, Campbell heard Defendant say to all the inmates over the intercom, while laughing, that Plaintiff was to blame for the dayroom being shut down later that evening. (Doc. No. 57 at 6; Doc. No. 67 at 3-5). While Defendant was releasing inmates from their cells for pills around 4:00 p.m., Campbell saw Tankersley and Botello approach staff member Galvez by the A-section table and heard one or both of them say to Defendant "not to trip" that they "would take care of the problem." (Doc. No. 67 at 3-5). Campbell heard Defendant respond to "do it outside" the building so they "don't have to do paperwork." (*Id.*) Approximately an hour later, Campbell was being escorted in his wheelchair to dinner by an ADA wheelchair pusher. (*Id.*) As they were exiting the building, Campbell saw Tankersley and Botello walking slowly, and they greeted each other. Tankersley then told Campbell to "go to chow" because when Plaintiff "came out they were going to fuck him up because he fucked up our dayroom." (*Id.*)

3:18-cv-02098-JAH-MDD

1    Later that evening around 8:00 p.m. pill call, Campbell saw Tankersley and Botello
2    "hanging out around the front of pill line by the wall." (*Id.*) Campbell attests he saw
3    Plaintiff standing in the pill line area and saw Tankersley and Botello walk towards
4    Plaintiff. (*Id.*; Doc. No. 57 at 6). As they walked toward Plaintiff, Campbell also saw two
5    RJD staff members sitting at tables that were located about two tables "out of firing range."
6    (*Id.*) He then saw Tankersley strike Plaintiff in the facial area, and then Botello started to
7    punch Plaintiff too. (*Id.*; Doc. No. 57 at 6). At that time, Campbell saw Defendant "standing
8    almost directly over [Plaintiff] and shot him" just after "Tankersley and Botello step[ped]
9    back." (Doc. No. 57 at 6; Doc. No. 67 at 3-5). After Defendant shot Plaintiff, Defendant
10   pushed the alarm. (Doc. No. 67 at 3-5).

11       In addition to observing the events leading up to and after the shooting of Plaintiff
12   by Defendant, Campbell testifies that he has personal knowledge of facts that support the
13   allegations in Plaintiff's complaint concerning Defendant's alleged intention and plan to
14   shoot and punish Plaintiff. Campbell attests that he has personal knowledge of Defendant
15   "utilizing inmates to assault other inmates" and taking inmates' personal property and
16   using the property as currency to pay other inmates. (Doc. No. 57 at 6; Doc. No. 67 at 3-
17   5). Campbell also attests that Defendant "would do a lot of moves for [Tankersley and
18   Botello] as a reward." (Doc. No. 67 at 3-5).

19       Mr. Tillman also lived in the same housing unit as Plaintiff and attests that he
20   personally observed the events leading up to, and after, the shooting of Plaintiff by
21   Defendant. (Doc. No. 57 at 11; Doc. No. 66 at 4). He testifies that Defendant "sent two
22   inmates to attack [Plaintiff] because he kept bringing up his property every day." (Doc. No.
23   57 at 11; Doc. No. 66 at 4). Tillman saw that Defendant "had a close-up shot to hit
24   [Plaintiff] in the legs" but that the shot "was meant for the face." (Doc. No. 57 at 11; Doc.
25   No. 66 at 4). After the shooting, Tillman saw another officer give Defendant a "thumbs
26   up" as if to communicate a good job. (Doc. No. 57 at 11; Doc. No. 66 at 4).

27       The Court finds that the supplemental declarations of Botts, Campbell, and Tillman
28   demonstrate the declarants' testimony is indeed based on personal knowledge. As such,

Plaintiff's objection to the portions of the R&R addressing the original declarations of Botts, Campbell, Tillman, and Cleveland is **SUSTAINED** and the Court **DECLINES TO ADOPT** this portion of the R&R striking the declarations.

### 3.   Objections to Plaintiff's Expert Report

The R&R sustained Defendant's objection to Plaintiff's expert report of William Adams because the magistrate judge found that Mr. Adams "does not establish genuine disputes of material fact regarding deliberate indifference or negligence; rather, he simply draws legal conclusions from undisputed facts." (Doc. No. 60 at 6). After review of the R&R, the record, and submissions of the parties, the Court accepts the findings made by the magistrate judge. Accordingly, the portion of the R&R addressing the expert report of William Adams is hereby **ADOPTED**.[4]

### B.   Defendant's MSJ

Defendant argues that he is entitled to summary judgment on the grounds that his force was reasonable and that he is entitled to qualified immunity. (Doc. No. 37). Plaintiff opposes entry of judgment in Defendant's favor because there are genuine issues of material fact on all of Plaintiff's claims. (Doc. No. 43).

### 1.   § 1983 Claims

Plaintiff's first cause of action raises claims for excessive force and failure to protect under the Eighth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983. (Doc. No. 1 at 5-7).

### a.   Eighth Amendment Excessive Use of Force

The Eighth Amendment prohibits the infliction of cruel and unusual punishment. U.S. Const. amend. VIII. To prevail on an Eighth Amendment claim under § 1983, the plaintiff must show that objectively he suffered a "sufficiently serious" deprivation.

---

[4] However, the expert report is not necessary to the Court's finding below that Defendant is not entitled to summary judgment because the Court finds that the inmate witness declarations establish genuine disputes of material facts regarding Defendant's state of mind.

*Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The plaintiff must also show that subjectively the defendant had a culpable state of mind in allowing or causing the plaintiff's deprivation to occur. *Id.* (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).

Plaintiff suffered a fractured eye socket. (Doc. No. 37 at 23; Doc. No. 44 at 16). Defendant does not argue that Plaintiff's injury is not objectively serious. Therefore, the Court will consider whether Defendant acted "with a sufficiently culpable state of mind." *Hudson*, 503 U.S. at 8.

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishment Clause, the core judicial inquiry is set out in *Whitley v. Albers*, 475 U.S. 312 (1986): whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. To determine whether the force used was excessive, courts consider factors such as the need for the application of force, the relationship between the need and amount of force that was used, and the extent of injury inflicted. *Whitley*, 475 U.S. at 321. "Equally relevant are such factors as the extent of the threat to safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them, and any efforts made to temper the severity of a forceful response." *Id.*

At the summary judgment stage, facts that are subject to genuine dispute are viewed by the court in the light most favorable to the plaintiff's claim. *Taylor v. Riojas*, 141 S. Ct. 52, 53 n.1 (2020). In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). Rather, it is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised. *Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 473 (1962). Thus, it is the province of the jury to weigh the conflicting evidence and decide whose testimony to accept as true.

Based on the record, the magistrate judge found that Plaintiff failed to establish that

3:18-cv-02098-JAH-MDD

Defendant maliciously and sadistically fired the launcher for the purpose of causing Plaintiff harm because Plaintiff failed to raise genuine issues of material fact regarding Defendant's state of mind. (Doc. No. 60 at 15-17). Instead, the magistrate judge found that Plaintiff's arguments that Defendant solicited Tankersly and Botello to attack Plaintiff and that Defendant was aiming for Plaintiff's head were unsupported by admissible evidence because Plaintiff's only support for these arguments were inadmissible inmate declarations that lacked personal knowledge. (*Id*.) Conversely, the magistrate judge found that there was admissible evidence that Tankersly and Botello attacked Plaintiff because he was bullying another inmate and were not told to attack Plaintiff by Defendant. (*Id*. at 15-16).

However, Plaintiff's inmate witness statement declarations that are based on personal knowledge provide evidence that Defendant solicited Tankersly and Botello to attack Plaintiff, and that Defendant aimed for Plaintiff's head to stop Plaintiff from continuing to peacefully protest the taking of his property by laying on the dayroom floor.[5]

Given the witness statement declarations, there is conflicting testimony regarding why Tankersley and Botello attacked Plaintiff and whether Defendant intentionally aimed at Plaintiff's head. On the one hand, the declarations of Botello and Tankersly state that they attacked Plaintiff because he was bullying another unnamed inmate. (Doc. Nos. 37-5 at 1; 57 at 21). Further, Defendant's declaration states that he never solicited or encouraged any inmate to attack Plaintiff, he did not intend for the foam round that he fired using the launcher to strike Plaintiff in the head, and he fired the launcher in a good faith effort to restore order and prevent injury to the inmates. (Doc. No. 37-3 at 3-4). On the other hand, Plaintiff denies that he bullied another inmate. (Doc. No. 44-3 at 2). Further, Plaintiff and the inmates mentioned herein declared on the basis of personal knowledge that Defendant solicited Tankersly and Botello to attack Plaintiff and that Defendant aimed at Plaintiff's head when he shot Plaintiff with the launcher. (Doc. Nos. 44-3; 57 at 4, 6-7, 11; 66 at 4;

---

[5] See the discussion hereinabove on the declarations of Cleveland, Botts, Campbell, and Tillman.

67 at 3-5; 69 at 4). The Court finds this factual dispute is material because it determines whether force was applied in good-faith to maintain or restore discipline, or whether subjectively Defendant had a culpable state of mind in allowing or causing Plaintiff's deprivation to occur.

For the reasons discussed above, the Court finds that a reasonable jury could conclude that Defendant applied force maliciously and sadistically for the very purpose of causing harm as part of his plan or intention to punish Plaintiff. At the same time, the Court finds that a reasonable jury could conversely conclude that Defendant acted in good faith to restore order and did not plan or solicit Tankersly or Botello to attack Plaintiff. Consequently, the disputed facts preclude the granting of summary judgment in favor of Defendant. Accordingly, the Court **DECLINES TO ADOPT** the portion of the R&R addressing Plaintiff's Eighth Amendment excessive use of force claim and **DENIES** Defendant's MSJ as to this claim.

### b.    Eighth Amendment Failure to Protect

Plaintiff argues Defendant failed to protect him by permitting inmates from different sections to be released for pill line and subsequently allowing Tankersly and Botello to remain in the dayroom after receiving medication instead of returning to their cell.

Under the Eighth Amendment, prison officials must "take reasonable measures to guarantee the safety of the inmates." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). Thus, "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (internal quotation marks and citation omitted). A failure to protect claim under the Eighth Amendment requires a showing that "the official [knew] of and disregard[ed] an excessive risk to inmate health or safety." *Id*. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Id*. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id*. at 842.

Here, the magistrate judge found that there is no admissible evidence that Defendant

solicited Tankersly and Botello to attack Plaintiff and therefore, there is no evidence suggesting Defendant knew he was exposing Plaintiff to a substantial risk of serious harm. (Doc. No. 60 at 18). As articulated above, the Court disagrees and finds that there is admissible evidence that Defendant solicited or encouraged Tankersly and Botello to attack Plaintiff.[6] Under Plaintiff's version of the facts, Defendant created the risk to Plaintiff's health or safety by both soliciting Tankersly and Botello to attack Plaintiff and orchestrating the attack. Despite the modified program (aka lockdown) in place at the time of the event that specified that no more than one housing section should have been released at a time, Plaintiff argues that Defendant orchestrated the attack by permitting Tankersly and Botello, who were housed in Section A, to hang out in the dayroom during pill line for Section B, which housed Plaintiff. But for Defendant permitting Tankersly and Botello to be out of their Section A cells during Section B's pill line time—in violation of the RJD modified program order—Tankersly and Botello would not have posed any risk to Plaintiff.

For the reasons discussed above, the Court finds that a reasonable jury could conclude that Defendant created or orchestrated Tankersly and Botello's attack on Plaintiff, thereby failing to take reasonable measures to guarantee Plaintiff's safety. At the same time, the Court finds that a reasonable jury could conversely conclude that Defendant acted in a good faith and customary manner when he permitted Sections A and B to simultaneously be released for pill line and did not plan or solicit Tankersly or Botello to attack Plaintiff. It is the province of the jury to weigh the conflicting evidence and decide whose testimony to accept as true. Consequently, the disputed facts preclude the granting of summary judgment in favor of Defendant. Accordingly, the Court **DECLINES TO ADOPT** the portion of the R&R addressing Plaintiff's Eighth Amendment failure to protect claim and **DENIES** Defendant's MSJ as to this claim.

---

[6] *Compare* the aforementioned discussion on the declarations of Devon, Cleveland, Botts, Campbell, and Tillman *with* the declarations of Defendant, Botello, and Tankersly. (Doc. Nos. 37-3; 37-5; 57).

### c.    Fourteenth Amendment

Plaintiff raises the same facts for his Fourteenth Amendment claims used to support his Eighth Amendment claims. (*See* Doc. No. 1 at 5-7; *see also* Doc. No. 44).

"'[W]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Cnty. Of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994)). As discussed above, the Eighth Amendment provides an explicit source of protection for the type of conduct alleged by Plaintiff. *See Farmer*, 511 U.S. at 834; *Hudson*, 503 U.S. at 6-7; *Whitley*, 475 U.S. at 319.

To the extent Plaintiff alleges a due process claim under § 1983 for deprivation of property, that claim fails as a matter of law because California law provides an adequate post-deprivation remedy. (*See* Doc. No. 1 at 5-7); *see Palmer*, 468 U.S. at 533; *see also Barnett v. Centoni*, 31 F.3d 813, 816-17 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810-895).

Accordingly, the Court agrees with the magistrate judge's finding that Plaintiff's claim is not properly stated under the Fourteenth Amendment. Therefore, the portion of the R&R addressing Plaintiff's Fourteenth Amendment claims is hereby **ADOPTED**.

### d.    Qualified Immunity

The R&R did not consider qualified immunity because the magistrate judge found that because Defendant is entitled to summary judgment on the merits of Plaintiff's § 1983 claims, there is no need to consider qualified immunity. However, the Court deems the issue of qualified immunity appropriate for consideration in light of the determination that Defendant is not entitled to summary judgment on Plaintiff's Eighth Amendment claims.

Qualified immunity is "immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mueller v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009) (citation and internal quotations omitted). Qualified immunity shields government officials from civil damages

3:18-cv-02098-JAH-MDD

unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity balances two important interests: (1) the need to hold public officials accountable when they exercise power irresponsibly; and (2) the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). It protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

In resolving the claim of qualified immunity, the Court must determine whether, taken in the light most favorable to Plaintiff, Defendant's conduct violated a constitutional right, and if so, whether the right was clearly established. *Mueller*, 576 F.3d at 993-95. Here, the Court finds that the evidence viewed in the light most favorable to Plaintiff demonstrates there exist triable issues of fact as to whether that right was violated. Therefore, the Court proceeds, without further discussion, to the second step of the inquiry.

"For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable [officer] would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent. *Id*.

Defendant testified in his deposition that unless deadly force is needed, he is not supposed to fire the launcher at an inmate's head, or at any part of the body within ten feet, because doing either is deadly force. (Doc. No. 44-4 at 37-38, 75-76). It is undisputed that Defendant applied deadly force when deadly force was not necessarily needed by shooting Plaintiff in the head. However, it is disputed that Defendant *intentionally* shot Plaintiff in the head. Defendant claims it was an accident because he was aiming for either Tankersly's or Botello's thigh—not Plaintiff's head. (Doc. No. 37 at 8; Doc. No. 44-4 at 89-91; Doc. No. 60 at 12, 15). Plaintiff alleges that Defendant intentionally shot him in the face, and

witnesses declared that they saw Defendant stand within ten feet of Plaintiff and had a clear line of sight when he intentionally aimed at Plaintiff's head. For example, Tillman declares that Defendant had a close-up shot to hit Plaintiff in the legs but that the shot was meant for the face. (Doc. No. 57 at 11; Doc. No. 66 at 4). Campbell attests he saw Defendant standing almost directly over Plaintiff and shot him after Tankersly and Botello stepped back. (Doc. No. 57 at 6; Doc. No. 67 at 3-5). This conflicting testimony presents a genuine issue of material fact. Accordingly, the Court **DECLINES TO ADOPT** the portion of the R&R regarding qualified immunity and denies Defendant's MSJ on the basis of qualified immunity.

### 2.      State Law Claims

Plaintiff also asserts two state law claims against Defendant, negligence and battery. (Doc. No. 1 at 8-9).

### a.      Negligence

'''[I]n order to prove facts sufficient to support a finding of negligence, a plaintiff must show that [the] defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury.'" *Hayes v. Cnty. Of San Diego*, 57 Cal. 4th 622, 629 (2013) (quoting *Nally v. Grace Cmty. Church*, 47 Cal. 3d 278, 292 (1988)). The California Supreme Court "has long recognized that peace officers have a duty to act reasonably when using deadly force. The reasonableness of an officer's conduct is determined in light of the totality of circumstances." *Id*. (citations omitted).

"A police officer's use of deadly force is reasonable if 'the officer has probable cause to believe that the suspect poses a significant threat of death or serious injury to the officer or others.'" *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 528 (2009). "Where potential danger, emergency conditions, or other exigent circumstances exist" the definition of reasonableness is "comparatively generous to the police." *Id*. (internal quotation marks and citation omitted). Additionally, the reasonableness of a particular use of force '''must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20

1  vision of hindsight.'" *Hayes*, 57 Cal. 4th at 632 (quoting *Graham v. Connor*, 490 U.S. 386,

2  396 (1989)).

3        Accordingly, "[a]s long as an officer's conduct falls within the range of conduct that

4  is reasonable under the circumstances, there is no requirement that he or she chose the

5  'most reasonable' action or the conduct that is the least likely to cause harm and at the same

6  time the most likely to result in the successful apprehension of a violent suspect, in order

7  to avoid liability for negligence" and "[l]aw enforcement personnel have a degree of

8  discretion as to how they chose to address a particular situation." *Id*. (internal quotation

9  marks and citations omitted).

10       Here, the magistrate judge reasoned that Defendant's use of force was within the

11  range of reasonableness under the circumstances because 1) the three inmates were

12  throwing punches at one another and punches may produce great bodily injury, 2) they did

13  not comply with Defendant's orders to get down, and 3) even though Defendant did not

14  assess the fight as one necessarily involving a threat of death, he wanted to subdue the

15  fighting to prevent unrest from spreading and further injury to the combatants. (Doc. No.

16  60 at 22-23). Put simply, the magistrate judge found that Defendant was not negligent for

17  missing his target and shooting Plaintiff in the eye because he was trying to stop inmates

18  from fighting. (*Id*.) Moreover, the magistrate judge reasoned, because "there is no

19  requirement that [the officer] choose the 'most reasonable' action or the conduct that is the

20  least likely to cause harm" the fact that Defendant had other use of force options available

21  or other correctional officers may have been able to end the altercation does not render

22  Defendant liable for negligence. *See Hayes*, 57 Cal. 4th at 632 (internal quotation marks

23  and citations omitted) (Doc. No. 60 at 23).

24       The Court disagrees with the magistrate judge's analysis because there is conflicting

25  testimony on whether Defendant acted reasonably when he fired the round that struck

26  Plaintiff. As discussed above, if Defendant planned, encouraged, or orchestrated the fight

27  as a pretext for using force, then Defendant's conduct would not fall "within the range of

28  conduct that is reasonable under the circumstances." *Hayes*, 57 Cal. 4th at 632.

Accordingly, the Court **DECLINES TO ADOPT** the portion of the R&R that dismisses Plaintiff's negligence claim and hereby **DENIES** Defendant's MSJ on the negligence claim.

### b.    Battery

Plaintiff also asserts a cause of action for battery against Defendant for hitting Plaintiff in the head with the round from a block gun. (Doc. No. 1 at 9-10). The Eighth Amendment's analytical framework governing Plaintiff's § 1983 claim applies with equal force to his state law claim for battery. *See Edson v. City of Anaheim*, 63 Cal. App. 4th 1269, 1273-74 (1998) (applying § 1983 claim standards to state law battery claim).

The magistrate judge reasoned that Plaintiff's battery claim fails because his excessive force claim fails. (Doc. No. 60 at 23). However, as discussed above, the Court finds that Plaintiff's excessive force claim does not fail. Accordingly, the Court **DECLINES TO ADOPT** the portion of the R&R that finds Plaintiff's battery claim fails and **DENIES** Defendant's MSJ on Plaintiff's battery claim.

### <u>CONCLUSION AND ORDER</u>

For the foregoing reasons **IT IS HEREBY ORDERED**:

1.    Plaintiff's objections to the R&R, (Doc. No. 61), are **SUSTAINED IN PART** and **OVERRULED IN PART**;

2.    All portions of the R&R not specifically objected to by Plaintiff are **ADOPTED**;

3.    Defendant's Ex-Parte Motion to Strike, (Doc. No. 70), is **GRANTED IN PART** and **DENIED IN PART**; and

4.    Defendant's Motion for Summary Judgment, (Doc. No. 37), is **GRANTED IN PART AND DENIED IN PART**.  The motion is **GRANTED** as to Plaintiff's

//

//

//

//

1  Fourteenth Amendment claim.  The motion is otherwise **DENIED**.

2      **IT IS SO ORDERED.**

3  DATED: June 10, 2022

4  _____

5  JOHN A. HOUSTON
   UNITED STATES DISTRICT JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28