UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARIFFE VAUGHN,<br><br>                          Plaintiff,<br>v.<br><br>CORRECTIONAL OFFICER A. PARKER,<br><br>                          Defendant. | Case No.: 3:18-cv-02098-JAH-MMP<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SANCTIONS**<br><br>**[ECF No. 159]** |

Pending before this Court is Defendant Correctional Officer A. Parker's ("Defendant") Motion for Sanctions against Plaintiff Shariffe Vaughn ("Plaintiff") for failure to timely disclose a percipient witness, which was filed with this Court on December 15, 2023. ECF No. 159 (the "Motion" or "Mot."). Plaintiff filed an Opposition on February 1, 2024. ECF No. 161 ("Opp'n"). Defendant filed a Reply on February 15, 2024. ECF No. 164 ("Reply"). A motion hearing on this matter took place before this Court on February 28, 2024. After a careful review of the pleadings and consideration of the parties' arguments, the Court **DENIES** Defendant's Motion for Sanctions.

///

///

# BACKGROUND

The case involves Plaintiff, an incarcerated individual housed at the Richard J. Donovan ("RJD") prison facility, who was allegedly shot in the head by Defendant using a state issued block gun on July 25, 2017.  ECF No. 1 ("Complaint" or "Compl.").  The instant Motion for Sanctions stems from Plaintiff's motion to amend the witness list to include a percipient witness, Mr. Andre Meade ("Meade"), which this Court granted at a hearing held on August 30, 2023.  ECF No. 150.  On August 30, 2023, the Court also ordered the parties to complete six witness depositions, including the deposition of Meade, by October 31, 2023.  *Id.*  The Court noted that the parties shall meet and confer after the depositions to advise the Court of any additional discovery that is necessary no later than November 15, 2023.  *Id.*  On November 15, 2023, the parties agreed that no additional discovery was necessary.  ECF No. 158.

### A. Motion for Sanctions

In his Motion for Sanctions, Defendant argues that Plaintiff negligently or intentionally misrepresented the basis for his motion to amend the witness list to include Meade, which formed the basis of the Court granting his motion to amend the witness list. Mot. at 4.[1]  In particular, Defendant argues that Plaintiff did not include Meade in his initial disclosures as required by Federal Rule of Civil Procedure 26 even though, according to Meade's deposition testimony, Meade allegedly told Plaintiff a week after the 2017 incident that he had information pertinent to the shooting and that he would testify on Plaintiff's behalf.  *Id.* at 6.  In addition to Meade's testimony, Defendant also points out that Plaintiff was in possession of an inmate housing list, which included Meade, to support his argument that Plaintiff negligently or intentionally misrepresented the basis for his application to amend the witness list to specifically include Meade. *Id.* at 7. Defendant argues Plaintiff's delay in disclosing Meade as a witness six years after the incident and

---

[1] Unless otherwise stated, page numbers referenced herein refer to page numbers generated by the CM/ECF system.

four years after the close of discovery prejudices Defendant's ability to defend against Meade's testimony at trial. *Id.* at 17. Defendant seeks redress from this Court in the form of sanctions, including the exclusion of Meade's testimony from trial, Defendant's costs for Meade's deposition, and travel fees and attorney fees; or, in the alternative, an instruction to the jury regarding the late disclosure at the time of trial. Mot. at 4-5.

In opposition, Plaintiff contends that upon receiving notice that potential witnesses would agree to testify in support of his claims, he timely disclosed all of them (including Meade) and presented all facts in support of his request to amend the witness list. Opp'n at 7. Plaintiff asserts that after the shooting, he was approached by many inmates wanting to discuss what happened and "[h]e may have asked people if they would testify," but has "no recollection of the details" of a conversation with Meade following the incident in 2017. *Id.* at 3. While Plaintiff does not dispute that a conversation with Meade *may have* occurred after the incident, he contends because he has no recollection of a specific conversation with Meade, he did not knowingly violate any discovery rules. *Id.* at 3. Plaintiff also argues that he is not responsible for any extensive delay and the sanctions requested by Defendant have no basis and are unreasonable. *Id.* at 7-8.

**B. Procedural History[2]**

Discovery in this matter opened over five years ago, on December 4, 2018. ECF No. 6. On December 21, 2018, after the pre-trial scheduling order was filed, Plaintiff provided his initial disclosures to Defendant. ECF No. 101-2, Ex. 1 (identifying seventeen potential witnesses). Plaintiff supplemented his initial disclosures on December 24, 2018, by adding an additional potential witness. ECF No. 101-2, Ex. 2. On March 15, 2019, Plaintiff served a document request on Defendant, wherein Request No. 8 demanded documents that identify every inmate who was housed in Plaintiff's housing unit (the

---

[2] Because the instant Motion pertains to an alleged delay in the disclosure of a percipient witness, a brief recitation of certain facts regarding discovery in this matter provides a necessary framework with which to contextualize the parties' arguments.

housing list) from July 19, 2017, to July 25, 2017. ECF No. 101 at 2; ECF No. 101-2, Ex. 7. A month later, on April 15, 2019, Defendant responded, explaining that the documents never existed, and the prison did not have and was unable to generate historical records regarding housing unit rosters given that the prison is only able to generate contemporaneous lists of housing unit occupants. *Id.* No potential witnesses were identified or disclosed.

On March 26 or 27, 2019, Plaintiff served a document subpoena on the California Department of Corrections and Rehabilitation ("CDCR"), again requesting documents that identify every inmate who was housed in Plaintiff's housing unit from July 19, 2017, to July 25, 2017. ECF Nos. 101, 101-2, Exs. 5-6. In response, on April 22, 2019, the CDCR stated that the documents never existed for the same reasons previously stated. *Id.* And again, no potential witnesses were identified or disclosed.

On May 10, 2019,[3] Defendant amended and supplemented his responses to Plaintiff's March 15 request, attaching a 160-page document titled, "Bed Occupant History," that included names of inmates who were housed in Plaintiff's housing unit from 2007-2019. ECF No. 101-2, Ex. 8. The parties met and conferred because, according to Plaintiff, the 160-page document was unreliable and unusable given the document contained 12 years of data when only seven days were requested, and only eight inmates were listed as housed in Plaintiff's housing unit during the requested seven-day period. ECF No. 101-1 ¶ 14. After the meet and confer, on May 13, 2019, Defendant served a set of second amended responses to Plaintiff's requests for documents which were identical to

---

[3] Though fact discovery closed on May 3, 2019 per the Court's initial pre-trial order (ECF No. 6 at 1), the discovery cut-off date was extended by agreement and Court Order to June 3, 2019, permitting Plaintiff to take depositions of six witnesses employed by the CDCR (*e.g.*, four floor officers, one supervisor of the housing unit, and the investigator of the shooting), unrelated to the instant Motion. ECF Nos. 18, 19. At least one of the six witnesses was previously disclosed in Plaintiff's initial disclosures. ECF No. 101-2, Ex. 1.

Defendant's May 10 amended responses. ECF No. 101-2, Ex. 9.

On June 6, 2019, Plaintiff provided Defendant with an exemplar of a bed history document that he obtained in an unrelated case, to demonstrate the type of housing list Plaintiff sought in his multiple requests and to demonstrate how, in comparison, the 160-page document was unusable. ECF No. 101 at 2. The very next day, June 7, 2019, Defendant served a document upon Plaintiff titled, "Bed History," that listed inmates who were housed in Plaintiff's housing unit from July 19, 2017, to July 25, 2017, as Plaintiff had originally requested on March 15, 2019. *Id*. The fact discovery cut-off date was June 3, 2019. Using this list, on July 3, 2019, Plaintiff mailed letters soliciting declarations from inmates. ECF No. 88 at 2. Plaintiff began receiving witness declarations from mid-July until November 2019. ECF Nos. 88 at 2, 101 at 5.

On August 1, 2019, Defendant filed a Motion for Summary Judgment ("MSJ"). ECF No. 37. On September 3, 2019, Plaintiff filed an opposition to the MSJ along with inmate declarations under seal, which were filed between September and November 2019. ECF Nos. 44, 46, 57, 64-69, 88. The declarations were obtained by Plaintiff as a result of his July 3, 2019 mailed solicitations to identify potential witnesses. ECF Nos. 88, 101. Plaintiff sent Meade the same letter in or about July 3, 2019, but Meade did not respond to the letter before June 10, 2022, the date the Court decided the MSJ. ECF Nos. 74, 127. On January 6, 2023, the Court held a pretrial conference and set a briefing schedule for the parties to file motions in limine ("MILs") and the MIL hearing. ECF No. 84. On February 13, 2023, the parties filed ten MILs. After the MIL hearing, the Court granted in part and denied in part Defendant's MIL to exclude certain witnesses and granted Defendant's request for leave to depose twelve witnesses, ordering that all deposition testimony be completed by July 31, 2023. *See* ECF Nos. 88, 121.[4]

///

---

[4] On July 21, 2023, the Court granted Defendant's request to continue the discovery cut-off date to depose three of the 12 witnesses. ECF Nos. 131, 133.

# LEGAL STANDARDS

## A. Federal Rule of Civil Procedure 26

Rule 26(a) of the Federal Rules of Civil Procedure requires parties to identify and disclose intended trial witnesses. Rule 26(a)(1) prescribes rules for initial disclosures, requiring that "a party must, without awaiting a discovery request, provide to other parties" "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses," unless the witness is to be used for impeachment purposes. Fed. R. Civ. P. 26(a)(1)(A)(i). Further, a party who has made a disclosure under Rule 26(a), must supplement or correct its disclosure in a timely manner if the party learns that in some material respect the disclosure was incomplete or incorrect if not otherwise made known during the discovery process. Fed. R. Civ. P. 26(e)(1)(A). With respect to pretrial disclosures, "a party must provide to the other parties and promptly file [] information about the evidence that it may present at trial other than solely for impeachment" including "the name and, if not previously provided, the address and telephone number of each witness—separately identifying those the party expects to present and those it may call if the need arises[.]" Fed. R. Civ. P. 26(a)(3)(A)(i).

## B. Federal Rule of Civil Procedure 37

The Ninth Circuit has found that "Rule 37(c)(1) gives teeth to [disclosure] requirements" by precluding information at trial that was not properly disclosed pursuant to Rule 26(a). *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). To that end, Rule 37(c)(1) provides that a party who fails to identify a witness as required by Rule 26(a) or (e) "is not allowed to use that [] witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard: (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions, including any of the orders listed in Rule

37(b)(2)(A)(i)-(vi)." Fed. R. Civ. P. 37(c)(1); *see also Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 861 (9th Cir. 2014) (citing Rule 37(c)(1)). The Ninth Circuit has identified several factors to guide the determination of whether substantial justification and harmlessness exist, including, but not limited to: "(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of trial; and (4) bad faith or willfulness in not timely disclosing the evidence." *Liberty Ins. Corp. v. Brodeur*, 41 F.4th 1185, 1192 (9th Cir. 2022) (internal citations omitted).

The Advisory Committee Notes describe Rule 37(c)(1) as a "self-executing," "automatic" sanction to "provide[] a strong inducement for disclosure of material . . . ." *Yeti*, 259 F.3d at 1106 (alterations in original) (quoting Fed. R. Civ. P. 37 Advisory Committee's Notes to 1993 Amendment). Thus, "[t]he party facing sanctions bears the burden of proving that its failure to disclose the required information was substantially justified or is harmless." *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 52 F.4th 1054, 1073 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 2583 (2023) (quoting *R & R Sails, Inc. v. Ins. Co. of Pa.*, 673 F.3d 1240, 1246 (9th Cir. 2012)). Nevertheless, sanctions under Rule 37(c)(1) are not mandatory and district courts are given wide latitude with respect to whether the issuing of sanctions under Rule 37(c)(1) is appropriate. *Yeti*, 259 F.3d at 1106; *see also Bonzani v. Shinseki*, 2014 WL 66529, at *4 (E.D. Cal. Jan. 8, 2014) (explaining that Rule 37(c)(1) exclusion sanctions are not mandatory, even when insufficient disclosures are not substantially justified or harmless).

## DISCUSSION

Defendant contends that Plaintiff violated Rule 26 because Meade's deposition testimony demonstrates that Plaintiff knew Meade would be a witness and Meade should have been identified in Plaintiff's Complaint and disclosed at the time of Plaintiff's initial and pretrial disclosures. Mot. at 4. Defendant argues that sanctions are warranted because the supposed late disclosure of Meade was not substantially justified in light of Meade's deposition testimony, which establishes that Plaintiff knew about Meade's willingness to

testify regarding the facts of this case a week after the incident in 2017. Mot. at 16. Defendant further argues that because Plaintiff was obtaining declarations from other witnesses at the time of his conversation with Meade, there is no explanation as to why Plaintiff did not obtain Meade's declaration. *Id.* And because the late disclosure of Meade has disrupted the parties' schedules, Defendant argues that the disclosure is not harmless. *Id.* at 19.

Plaintiff, however, calls into question Defendant's proposed timeline, arguing that Plaintiff could not have spoken with Meade in the timeframe alleged because he was in the hospital and then at the California Men's Colony after the alleged shooting for several weeks before returning to RJD. Opp'n at 3. Plaintiff contends that once he did return to RJD, he spoke with many individuals, which may have included Meade, but does not remember specific details of any alleged conversation. *Id.* Plaintiff contends that though he mailed to Meade a letter seeking potential witnesses at or about the same time he mailed letters to all other potential witnesses, he did not obtain Meade's declaration. According to Plaintiff's counsel, Meade stated he did not respond because his personal property (which included the letter) was confiscated during a transfer from the prison in Lancaster, California ("LAC") to the prison in Salinas Valley ("SVSP"). ECF No. 127 at 2. Meade did not think a response was urgent. *Id.* at 2-3. About a year later, Meade discovered the letter was removed from his property, but could not recall how to contact Plaintiff's counsel. *Id.* at 3. On July 17, 2023, Meade and Plaintiff found each other within the prison population at LAC and discussed the 2017 incident. *Id.* Meade then asked to speak to Plaintiff's counsel. *Id.* at 3. Two days later, on July 19, 2023, Plaintiff filed a motion to amend the witness list. *Id.* Plaintiff asserts that because he disclosed Meade as soon as he learned he would be a percipient witness, sanctions are not warranted. *Id.* at 4.

As stated, Rule 26 prescribes rules for initial disclosures, requiring that, among other things, a party is to provide to other parties the names of known individuals likely to have discoverable information. Fed. R. Civ. P. 26(a)(1)(A)(i). "Subparagraph (A) [of subdivision (a)] requires identification of all persons who, based on the investigation

conducted thus far, are likely to have discoverable information relevant to the factual disputes between the parties." *See* Advisory Committee Notes to 1993 Amendments to Fed. R. Civ. P. 26(a). The Advisory Committee Notes explain "disclosure requirements should . . . be applied with common sense" and caution litigants to avoid "indulg[ing] in gamesmanship with respect to disclosure obligations." *Id.*

Here, Defendant argues that Plaintiff and Plaintiff's counsel made misrepresentations that they first discovered Meade in 2023 as a potential witness. Mot. at 13. Defendant suggests that Meade was adamant in his recollection during the deposition that the conversation with Plaintiff occurred within a week or so after the shooting. Mot. at 16-17. Plaintiff, however, asserts he was not at RJD during the time Defendant claims he had a conversation with Meade, but instead was undergoing medical treatment in the hospital and at California Men's Colony after the incident for approximately three weeks before his return to RJD. Opp'n at 2. Defendant has not challenged Plaintiff's assertions relating to his timing of—and locations during—his medical treatment. Additionally, Plaintiff contends he did not remember "everyone who talked to him about the shooting" nor did he "remember everything they spoke to him about" and therefore did not make any misrepresentations. Opp. at 4-5. And Plaintiff also contends the subject conversation occurred on July 17, 2023, at the LAC. ECF No. 127 at 3.

As an initial matter, the Court finds no violation of Rule 26. Indeed, here the uncontested factual record reflects that there was delay in Meade receiving and responding to Plaintiff's witness solicitation letter, due, in large part, to Meade's transfers between different prison facilities. ECF No. 127 at 2-3; ECF No. 159-1 at 39. About a year later, after Meade had received the solicitation letter, he discovered the letter was removed from his property and he could not recall the name of Plaintiff's attorney. ECF No. 127 at 2-3. On July 17, 2023, Meade and Plaintiff discussed the incident and two days later, Plaintiff

filed the motion to amend the witness list.[5] Plaintiff acted diligently in supplementing his initial and pretrial disclosures.

In consideration of the entire record and the parties' oral arguments, the Court does not agree with Defendant's suggestion that Plaintiff's performance of responsibilities under Rule 26 was dilatory, thereby resulting in a breach of Plaintiff's discovery responsibilities. Nevertheless, in the event Plaintiff violated discovery disclosures prescribed by Rule 26 (which the Court does not find), this Court finds, for the following reasons, that the Motion should be denied because Plaintiff's alleged discovery violation was substantially justified or was harmless. *See* Fed. R. Civ. P. 37(c)(1).

**A. Substantial Justification**

In determining whether the alleged delay in disclosing Meade was substantially justified, the Court looks to the four *Liberty* factors. *See Liberty Ins. Corp.*, 41 F.4th at 1192. Under the **first factor**, the Court must ask whether there was prejudice or surprise. Though the Court recognizes that both Plaintiff and Defendant may have been surprised in July 2023 by Meade's purported trial testimony, Defendant's newfound knowledge of the nature of Meade's testimony did create prejudice to Defendant's defense of Plaintiff's claims. This factor weighs in favor of Defendant.

Next, the Court turns to the **second factor**—the ability of Defendant to cure any prejudice. Defendant contends that "no amount of discovery can cure the prejudice to Defendant" given that Meade's testimony would have guided Defendant's entire approach to the case. Mot. at 17. In particular, Defendant points out that, according to Meade's testimony, on the day before the incident, Parker solicited him to assist Parker in causing harm to Plaintiff and Meade refused. *Id.* at 6. Defendant argues that he could have further investigated Meade's claims by attempting to locate any witnesses to the conversation between he and Parker the day before the incident, asked Plaintiff about his conversation

---

[5] Defendant does not challenge Plaintiff's assertions with respect to the July 17, 2023 meeting at LAC by argument or with portions of Meade's deposition testimony.

with Meade during Plaintiff's deposition, asked every witness about Meade's testimony, and asked Defendant what he remembered about Meade's allegations, and thereby strategized accordingly. *Id.* at 17. Plaintiff, on the other hand, argues that he "identified witnesses early in discovery [in his initial and supplemental disclosures], and Defendant had no interest in taking depositions of those witnesses" until after summary judgment was denied. Opp'n at 5. Further, Plaintiff argues that none of the witnesses Defendant deposed was asked about any other potential witnesses with knowledge of recruitment by prison staff and that Defense counsel can now ask Defendant "anything they want." *Id.* at 6.

In considering the parties' arguments, the Court finds it helpful to look back to the record. At the hearing on August 30, 2023, the Court not only reopened discovery—thereby allowing Defendant to depose Meade and five other witnesses—but also preemptively noted that "the Court may favorably entertain" a request to take additional discovery. ECF No. 157 at 48 (Transcript of August 30, 2023 Motion Hearing). Indeed, district courts within this Circuit have found that parties are able to cure prejudice where, like here, the party is able to depose relevant witnesses. *See, e.g.*, *Soverns v. Delta Air Lines Inc.*, 2023 WL 2768431, at *2 (N.D. Cal. Apr. 3, 2023) ("Soverns had the ability to cure the minimal prejudice when Delta offered to make both experts available for deposition"); *Liberty Mut. Fire Ins. Co. v. Bosa Dev. Cal. II, Inc.*, 2019 WL 3554938, at *6 (S.D. Cal. Aug. 5, 2019) (finding curable prejudice based on sufficient time available to depose expert witness a second time regarding his supplemental report at defendant's expense); *Davis v. Davison Hotel Co., LLC*, 2013 WL 3337669, at *3 (C.D. Cal. July 1, 2013) ("proper remedy for late disclosure would be to allow [the party] to take the depositions of these witnesses, not to preclude their testimony entirely"). Accordingly, the Court finds that, despite the timing of Meade's discovery as a potential witness, in light of the purported materiality of Meade's testimony in support of Plaintiff's claims, allowing Defendant to depose Meade, in addition to permitting Defendant to request any additional discovery necessary to defend against Plaintiff's claims—which Defendant later

determined was not necessary[6]—mitigated any prejudice caused by the timing of Meade's disclosure. This factor weighs in Plaintiff's favor.

The Court next looks to the **third factor**—the likelihood of disruption of the trial. Here, pre-trial deadlines have been vacated and, as Defendant acknowledges in his Motion, no trial date has yet been set. Thus, the Court finds no likelihood of disruption of the trial or the progression of this case. *See Liberty Mut. Fire Ins. Co.*, 2019 WL 3554938, at *6 (finding no likelihood of disruption of the trial where "all pre-trial deadlines have been vacated and there is no trial date or even a pretrial conference looming"). This factor weighs in Plaintiff's favor.

Finally, the Court turns to the **fourth factor**—bad faith or willfulness involved in the timing of Meade's disclosure. Defendant argues that, based on Meade's newly obtained deposition testimony, Plaintiff and Plaintiff's counsel made misrepresentations that they first discovered Meade's knowledge of the incident and availability as a witness in July 2023. Mot. at 13. As stated, according to Plaintiff, Meade was among those inmates who did not initially respond to Plaintiff's letter seeking witnesses. ECF Nos. 127, 127-1. However, according to Plaintiff, Meade stated at the time of receipt of Plaintiff's letter, he resided at LAC. ECF No. 127 at 2. He was later moved to SVSP temporarily, but stayed there during the Covid-19 outbreak. *Id.* Then, he was later returned to LAC. *Id.* at 3. It was then that Plaintiff and Meade had the conversation regarding his willingness to be a witness on Plaintiff's behalf. *Id.* Plaintiff argues that he did not remember "everyone who talked to him about the shooting" nor did he "remember everything they spoke to him about" and therefore did not make any misrepresentations. Opp. at 4-5. Plaintiff and Meade have different and conflicting versions as to when they first recall having conversations about the events the day Defendant allegedly shot Plaintiff. Defendant asks this Court to make a credibility finding. While district courts can make a "credibility

---

[6] *See* ECF No. 158 (wherein Defendant agreed that "no additional discovery [wa]s necessary").

determination" including a finding of "bad faith," (*Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006)), the Court does not find there to be sufficient information on this record with which to make such a finding.

Lastly, Plaintiff argues that he had no motive to hide Meade as a witness. Put differently, according to Plaintiff, if Plaintiff had known of Meade at the time Defendant alleges, why would Plaintiff intentionally omit Meade from his initial, pretrial or supplemental disclosures only to risk having Meade's testimony excluded? For these reasons, and for the reasons expressly included in the Court's consideration of "harmlessness" below, this factor weighs in favor of Plaintiff.

Accordingly, taking into consideration all *Liberty* factors, the Court finds that the timing of Plaintiff's disclosure of Meade as a witness was substantially justified.

**B. Harmlessness**

In *Hoffman v. Construction Protection Services, Inc.*, the Ninth Circuit held that a late disclosure of information required by Rule 26(a) is not harmless where it requires discovery to be reopened and a new schedule to be created. 541 F.3d 1175, 1180 (9th Cir. 2008), *as amended* (Sept. 16, 2008) ("modifications to the court's and the parties' schedules support[] a finding that the failure to disclose was not harmless"). District courts set pretrial schedules to allow the court and parties to efficiently adjudicate a matter and deal with cases in a thorough and orderly manner, and they must be allowed to enforce them "unless there are good reasons not to." *Wong v. Regents of Univ. of California*, 410 F.3d 1052, 1062 (9th Cir. 2005) ("Sometimes there may be good reason to permit an identification of additional witnesses after the established deadline.").

Defendant asserts that Plaintiff's disclosure of Meade is not harmless because it has disrupted the parties' and the Court's schedules and because Defendant has already incurred expenses investigating the claim and deposing Meade. Mot. at 19. A deeper dive into the record does not demonstrate, as Defendant asserts, that Plaintiff's conduct caused the majority of the discovery and other delays resulting in the disruption of scheduling and the hindering of judicial efficiency.

First, the derailing of discovery production in this case began over five years ago after Plaintiff propounded two requests for production of records and two subpoenas served upon the CDCR relating to Defendant identifying every inmate who was housed in Plaintiff's housing unit from July 19, 2017, to July 25, 2017.[7] The Court notes that Defendant's first amended response to Plaintiff's second request for documents was a 160-page housing list containing inmates housed in the facility from 2007-2019. The Court's review of that housing list revealed Meade's name, but his name was not identified as a resident of the housing unit during the seven-day period requested by Plaintiff. ECF No. 101-2, Ex. 8. Defendant does not explain, much less mention, the absence of Meade's name being listed within the timeframe requested by Plaintiff. In the Court's view, Defendant had the discovery-related responsibility to produce the specific information requested in Plaintiff's very clear request for documents as opposed to requiring Plaintiff to comb through a haystack of 160 pages in order to identify relevant potential witnesses.

Second, after Plaintiff's meet and confer with Defendant on May 21, 2019, (ECF No. 29-5 ¶ 4), Plaintiff shared with Defendant, on June 6, 2019, an exemplar of the information sought. Curiously, Defendant produced a limited and very usable housing list, which included Meade, for the seven-day period within twenty-four hours. This Court finds that Defendant's ability to produce the specific records sought within twenty-four hours of receipt of the exemplar is extremely disturbing and strongly supports a finding that Defendant did not make a good faith effort to produce the limited discovery requested by Plaintiff. Upon receipt of the June 7, 2019 housing roster, Plaintiff dutifully utilized it to continue his investigation by sending letters to inmates residing in the housing unit at the time of the incident to determine whether anyone had personal knowledge of the incident and would be willing to testify.

Plaintiff also met and conferred with Defendant regarding filing inmate witness

---

[7] *See* chronology of events. *Supra* at 3-4.

identities under seal. ECF No. 48-1. Plaintiff identified the witnesses and their declarations in his opposition to Defendant's MSJ and filings shortly thereafter. And, when Plaintiff learned of Meade as a percipient witness and his willingness to be a witness for Plaintiff on July 17, 2023, he timely requested to amend the witness list two days later. ECF No. 127. As such, Plaintiff abided by his duty to supplement his disclosures with the identities of new witnesses once they were identified, thereby substantially complying with Rule 26(e)(1)(A). *See generally* Fed. R. Civ. P. 26(e).

Third, aside from deposing Plaintiff, Defendant failed to meaningfully engage in discovery until well after he filed his MSJ. ECF Nos. 6, 101-1, Ex. 1 at 1-2, Ex. 2 at 1. And while Defendant challenged Plaintiff's ability to use the declarations of potential witnesses to defend against the MSJ, he did not request to conduct discovery of those witnesses before or immediately after the Court's denial of his motion.[8] In fact, Defendant took no action relating to seeking a re-opening of discovery for nearly three and a half years between September 3, 2019, and February 2023. And, despite what should have been a sobering realization that this case would proceed to trial after the Court denied summary judgment, Defendant still waited eight additional months before requesting this Court to re-open discovery. ECF Nos. 88, 84.

Fourth, it is important to note that Defendant, in his purported timeline supporting his argument of excessive delays caused by Plaintiff, fails to account for or even acknowledge the extraordinary and unprecedented pandemic that paralyzed, in the United States and the world, in large measure business and everyday life in the United States, including the operations of the court system, from in or before March 2020 to about June 2022. Indeed, in response to the Covid-19 pandemic, the prison system adopted additional,

---

[8] After a volley of motions and responses focusing on striking the declarations, this Court resolved the issue by overruling the Magistrate Judge's recommendation to strike the declarations to the MSJ. ECF No. 77. The Court went on to grant in part and deny in part Defendant's MSJ on June 10, 2022, based upon Plaintiff's opposition and attached exhibits. ECF Nos. 44, 74.

precautionary policies to prevent the spread of the coronavirus. *See generally United States v. Topps*, 2020 WL 5890433, at *13 (D. Alaska Oct. 1, 2020), *report and recommendation adopted as modified* (Nov. 5, 2020) (suspending in-person visitation with counsel to ensure the safety of prisoners and prison staff during the Covid-19 pandemic). At the same time, however, parties to civil actions in federal court, such as Defendant here, were not restricted from motion practice.[9] The Court finds that Defendant could have (and should have) sought to re-open discovery at an earlier date.

Lastly, though this Court recognizes that Plaintiff should have earlier sought to meet and confer concerning Defendant's April 15, 2019 responses to Plaintiff's discovery requests and thereafter should have filed a motion to compel, the Court also acknowledges that Plaintiff's lawyer was virtually handcuffed from conducting an independent investigation without a housing list given that his primary—or perhaps only—pool of relevant witnesses supportive of his claims were inmates, otherwise not available to him or his investigators. At the same time, however, this Court finds Defendant's conduct in denying the existence of housing lists containing the sought-after information until four days after the discovery cut-off in addition to Defendant's delay in seeking additional discovery upon Plaintiff's supplemental disclosures demonstrates that any extensive delay in pursuing discovery in this matter does not fall squarely in Plaintiff's lap. Indeed, much of the discovery delay in this matter was based on, at best, Defendant's own shortcomings and, at worst, Defendant's discovery-related strategy or gamesmanship. By filing this Motion, Defendant invites this Court to turn a blind eye to a record littered with Defendant's own pattern of discovery delays. The Court is unwilling to do so.

---

[9] Even though Covid-19 generally precluded in-court appearances, and initially jury trials, in the Southern District of California, the Court continued to handle civil motions, including Status Conferences, Motions to Dismiss and Motions for Summary Judgment via video and conference calls, and even commenced with conducting limited jury trials in early Fall of 2021 under the direction of a consulting Epidemiologist without any Covid-19 related medical issues. *See* Order of the Chief Judge Nos. 18, 30.

Plaintiff has demonstrated that the identity of Meade as a witness could not have been reasonably anticipated at the time the initial and pretrial disclosures were due. Plaintiff promptly notified counsel and the Court upon discovering Meade as a witness and Plaintiff promptly offered Meade for the taking of his deposition.

The Court finds that the facts in *Hoffman* are not applicable here, but rather fall squarely within the exception of the rule provided in *Wong*. Accordingly, the Court finds the circumstances surrounding the timing of Meade's disclosure, the actions and inactions of Defendant, and the consideration of the *Liberty* factors, adopted herein, support this Court's finding that there are "good reasons" presented to adjust the scheduling of proceedings in this case. *See Wong*, 410 F.3d at 1062. Based upon the foregoing reasons, the Court finds that the timing of Plaintiff's disclosure of Meade was harmless. As such, the sanctions requested by Defendant are not warranted.

## CONCLUSION

Defendant's Motion for Sanctions is **DENIED.**

DATED: June 6, 2024

_____
JOHN A. HOUSTON
UNITED STATES DISTRICT JUDGE